# EXHIBIT A

to Declaration of Richard Vera in Support of Motion to Dismiss

Case No.  08 CV 0747 WQH CAB



# THE ROBERT F. KENNEDY

# FARM WORKERS MEDICAL PLAN

## UNITED FARM WORKERS OF AMERICA,

## AFL-CIO

## JANUARY 2003

# MEDICAL PLAN BENEFITS

The following pages provide a summary description of the cost management programs and benefits offered to you and your eligible dependents under the Robert F. Kennedy Farm Workers Medical Plan.

## Preferred Provider Contracts

The Plan uses Community Care Network (CCN) which provides a list of contracted Hospitals and Physicians. The Plan pays the contracted rates for services rendered to participants of the Plan. The Plan encourages use of the contracted providers and hospitals.

To find a CCN provider please refer to your CCN directory. Since information in the directory changes from time to time we suggest you confirm that your provider of choice is a CCN provider. For further assistance you may call the Plan Administrative Office, or the CCN service center directly at (800) 226-5116 (then press option 2 and then option 4), or visit the CCN website at www.ccnusa.com (click on group health PPO).

**The penalty for failure to use a CCN hospital or physician is the amount covered by the Plan to 50% of the allowable charges.**

Exception of the penalty will be for any life threatening emergency or if the patient lives more than 40 miles from a CCN facility or provider.

## Cost Management Programs

The Plan will impose a penalty for failure of the patient to comply with (1) pre-treatment certification of admission to all hospitals, (2) pre-treatment certification for selected outpatient diagnoses and procedures and (3) case management for selected diagnoses and procedures. Failure to comply with the Cost Management programs will result in the reduction in the amount covered by the Plan to 50% of the allowable charges.

The Plan contracts with Community Care Network (CCN) to provide the following cost management programs:

1. **Pre-treatment certification of inpatient admissions to all hospitals.** The Robert F. Kennedy Farm Workers Medical Plan requires that CCN review all hospital admissions to determine if the admission is warranted. Your physician should contact CCN at (800) 526-7936, Option 4, to initiate the review proceedings. Admissions that cannot be scheduled in advance, such as emergencies, are evaluated when you are admitted to be certain that the admission is medically necessary under the terms of the Plan.

2. **Pre-treatment certification of selected outpatient diagnoses and procedures.** Your physician should call CCN's Utilization Management Department at (800) 526-7936, Option 4, to obtain pre-treatment certification. The Plan requires the following outpatient procedures to be certified by CCN:

   (a) Arthroscopy - (knee)
   (b) Blepharoplasty
   (c) Cardiac Catheterization
   (d) Carpal Tunnel release
   (e) Colonoscopy
   (f) CT Scan (brain, sinus, pelvis, bone density)

26

   (g) Diagnostic Laparoscopy (pelvic)
   (h) EMG (upper extremities)
   (i) Laparoscopic Cholecystectomy
   (j) MRI (all)
   (k) Myelogram
   (l) Percutaneous Coronary Angioplasty
   (m) Percutaneous Diskectomy
   (n) Reduction Mammoplasty
   (o) Resection/Rhinoplasty
   (p) Septoplasty/Submucous
   (q) Stem Cell Transplant
   (r) Upper GI Endoscopy
   (s) Uvulopalatopharyngoplasty

   The list of outpatient procedures may change from time to time. Please call the Plan Administrative Office for verification.

3. **Case management of selected diagnoses and procedures.** Extensive, long-term treatment and/or potentially high cost care may be subject to CCN's Medical Case Management program. Case management assures that the Participant obtains quality medical care by the most cost-effective use of health care resources. Medical case management services seek alternative settings and providers, coordinate the sequence of care by facilitating communications among providers and patient, and perform continuous monitoring of care. CCN will notify your physician, if necessary, to initiate assistance under this program. The Plan requires the following diagnoses and procedures be managed by CCN:

   a. **AIDS/AIDS Related**
      Acquired Immune Deficiency Syndrome
      AIDS-related complex (ARC)
      HIV positive

   b. **Cardiovascular**
      Subacute bacterial endocarditis

   c. **Ear, Nose and Throat**
      Laryngectomy
      Radical neck surgery

   d. **Endocrine**
      Chronic pancreatitis

27

e. **Malignancy**
Any brain, liver, lung and stomach cancers (primary or secondary metastases)
Any cancers in the terminal stage
Hodgkin's Disease
Kaposi's Sarcoma
Leukemia, lymphoma, multiple myeloma
Pediatric Cancers
Radiation therapy and/or chemotherapy requiring frequent hospitalizations

f. **Neonatal**
All admissions to the neonate ICU
Birth weight under 4 pounds
Respiratory Distress Syndrome
Necrotizing enterocolitis

g. **Neurologic**
Amyotrophic lateral sclerosis (ALS)
Guillain-Barre syndrome
Loss of consciousness greater than 24 hours
Encephalitis
Open and closed head injury
Spinal cord injury
Stroke (CVA)

h. **Obstetrics**
Hospitalization before 32 weeks gestation
Premature labor

i. **Orthopedic**
Amputations
Crushing injuries
Multiple fractures
Osteomyelitis

j. **Pulmonary**
Debilitating emphysema
Pneumocystis carinii pneumonia (PCP)
Respirator dependency

k. **Renal**
Dialysis
Renal Failure

l. **Any patient**
Inpatient for 14 days or more
With multiple hospital admissions within a brief span of time (greater than 3 within 6 months)
Requiring rehabilitation
Requiring total parenteral nutrition at home
Requiring an organ transplant
With severe burns
With the probability of claims of $30,000 or more
With the potential for alternative care in a hospice, sub-acute rehab, transitional living center or at home

28

**Deductible (not applicable to all Plans)**
The deductible (if any) is an expense that you must pay before the Plan will pay for Covered Health Benefits (excluding Medicine obtained through the participating pharmacy program). After the deductible has been satisfied, the Plan will provide the scheduled payments for medical benefits on your behalf. A separate deductible is applicable for each family member, up to a maximum of three (3) deductibles per family per year. Refer to the Summary of Medical Plan Benefits for the specific deductible requirements of your Plan.

**Annual Out-of-Pocket Maximum (not applicable to all Plans)**
The out-of-pocket maximum is the maximum amount set forth by the Plan places a limit on the out-of-pocket expenses an eligible employee or dependent is required to pay in a calendar year for medical benefits.

The out-of-pocket expenses are the eligible charges for covered services not paid by the Plan, excluding (1) amounts in excess of the CCN allowable amount, (2) amounts in excess of UCR, and (3) any prescription drugs received through the managed care prescription drug program. After the out-of-pocket expenses reach your Plan's out-of-pocket maximum, the Plan will pay 100% of allowable charges incurred by that individual for the remainder of the calendar year (not to exceed the maximum amount payable by the Plan as set forth below). A separate Annual Out-of-Pocket Maximum is applicable for each family member, up to maximum of three (3) per family per year. Refer to the Summary of Medical Plan Benefits for the annual out-of-pocket maximum corresponding to your particular Plan.

**Annual and Lifetime Major Medical Maximums (All Plans)**
There are limitations to the amount payable by the Plan for any eligible individual employee or dependent during a calendar year as well as during a lifetime. Annual maximum amounts and lifetime maximum amounts vary based on whether you are enrolled in a U.S. Plan or a Medical Pilot Program Plan.

**Minimum Newborn and Maternity Stays**
Group health plans and health insurers offering group insurance coverage generally, under federal law, may not restrict benefits for any hospital length of stay in connection with childbirth for the mother or newborn child to less than 48 hours following a normal vaginal delivery or less than 96 hours following a cesarean section, or require that a provider obtain authorization from the plan or the insurance issuer for prescribing a length of stay not in excess of the above periods.

## BASIC AND/OR MAJOR MEDICAL BENEFITS (All Plans)

**Covered Services and Supplies**
Expenses incurred for the following services and supplies will be covered under the Robert F. Kennedy Farm Workers Medical Plan at the applicable benefit schedules corresponding to your particular plan (see the Summary of Medical Plan Benefits), when they are determined to be medically necessary for treatment:

1. Doctor Visits, at the doctor's office, in your home, or in the hospital.

2. Outpatient X-Ray and Laboratory Examinations, not including therapeutic x-ray procedures.

3. Medicine, subject to generic substitution when available.

4. Ambulance Service (if covered by your Plan), for an emergency trip to a hospital.

5. Emergency Room Service, if covered by your Plan.

6. Emergency Dental Services (including x-rays), when not covered by a Dental Care Plan.

7. Inpatient Hospital Care. Non-emergency related situations require the approval of a doctor.

8. Surgical/Anesthesia Benefits, including vasectomies and tubal ligations. Mastectomies when medically necessary, and:

   (a)   Reconstruction of the breast on which the mastectomy was performed;

29

Exhibit A, page 6

(b) Surgery and reconstruction of the other breast to produce a symmetrical appearance, and

(c) Prostheses and physical complications of all stages of mastectomy including lymphedema.

9. Pap Smears.

10. Prostate Exams.

11. Child Immunizations.

12. Physical Therapy.

13. Chiropractic Visits.

The Major Medical percentages apply to all covered expenses in excess of Basic Benefits, except Out-Patient Diagnostic X-Ray and Laboratory Examinations, Physical Therapy, and Chiropractic Benefits.

## BASIC / MAJOR MEDICAL BENEFITS (Not applicable to all Plans)

After the Basic Medical Benefits (if any) are exhausted, and the calendar year deductible (if any) has been satisfied, the Plan will pay a percentage (depending on your particular Plan) of your eligible expenses incur no medical care, up to the Plan maximums. The Major Medical copayment percentages by Plan are listed in the Summary of Benefits.

Example: You work for a Participating Employer, you have met the eligibility requirements, and you have already satisfied the $75 calendar year deductible (if any) for the calendar year of the visit. You visit the Covered U.S. specialist for this plan covers Doctor Visits as a Basic Benefit at $25 per visit. The remaining balance will be covered under Major Medical benefits. If you have 80% Major Medical coverage, as an example, the Plan would pay $40 ($50 times 80%), you are then responsible for the remaining balance of $10 ($75 - $25 - $40 = $10).

Regarding your prescription drug benefits, this Plan has contracted with Express Scripts to provide prescription drug (Medicine) benefits. If you go to a pharmacy that is out of their network, your prescription may be covered under the Plan at the applicable percentage corresponding to your particular plan after the deductible (if any) has been met. If you receive your medication from a non-participating pharmacy, you may obtain reimbursement by filing a claim at the Plan Administrative Office (see pages 19 to 22 on Claims Procedures). Contact the Plan Administrative Office for more details.

## MEXICAN PILOT PROGRAM

Once a service is presently available under the Union Field Office or the Plan Administrative Office, which consists of the city itself and the surrounding areas of Baja, California within a forty-five mile radius. Employees living within the Mexican Service Area may enroll in the Mexican Pilot Program. At the discretion of the Plan, a family currently domiciled in the U.S. but within commuting distance of the Mexican Service Area may be allowed to enroll in the Mexican Pilot Program.

If you wish to enroll in the Mexican Pilot Program, contact the Union Field Office or the Plan Administrative Office for full details on the benefits provided under that Program and the procedures for enrollment. Once enrolled in this Program, your right to receive the benefits described in this booklet will also be limited by the rules of that Program. The Administrative Office will make available to you information about the program including claim procedures.

**Important:** In order to be eligible for the Mexican Pilot Program, you and your eligible dependents may not be covered under any other Mexican National Health Insurance Benefits. Also, to be eligible for Internal Coordination of Benefits under the Mexican Pilot Program, both you and your spouse must be enrolled in that program.

Deductible amounts, annual out-of-pocket maximum amounts, annual major medical maximum amounts and lifetime major medical maximum amounts vary considerably with the Mexican Pilot Program. Please refer to pages 42 to 45 for the specific amounts pertaining to your specific Plan.

30

## U.S. Benefits and the Mexican Pilot Program

If you meet the qualifications above and decide to enroll in the Mexican Pilot Program, you and your eligible dependents may receive your Covered Health Benefits in the United States as well as the Mexican Service Area. Covered Benefits received in Mexico so that no duplication of benefits will occur. For example, if the United States benefit, dollar maximum per year for Surgical Benefits under your plan is $1,000 in the United States and $550 (U.S. dollars) in Mexico, you will be entitled to $1,000 per year for Surgical Benefits. Obtaining $550 in Surgical Benefits in Mexico and a given year would leave you with $650 to utilize in the United States. Vice versa, obtaining $900 in the United States would leave you $200 left to utilize in Mexico.

## Benefits Outside of the United States

If you are enrolled in the Mexican Pilot Program, the rules of that Program will apply as stated above. If you are not enrolled in the Mexican Pilot Program, benefits are available only in the United States except as follows:

1. Pregnancy-related Hospital and/or Surgical benefits associated with childbirth and miscarriage in **emergency situations are** payable for eligible employees or their dependent spouses anywhere in the world. Where such pregnancy-related Hospital and/or Surgical Benefits are payable outside of the United States, such benefits are subject to all of the conditions and limitations and required proof of claim described in this booklet. Where such employee or dependent spouse is enrolled in the Mexican Program, the rules of that Program will apply to determine which benefits are payable for a delivery or miscarriage in Mexico.

2. Employees and their eligible dependents who desire to receive benefits (other than pregnancy related Hospital and Surgical Benefits) in Mexico may be eligible for enrollment in the Mexican Pilot Program (see page 30).

## EXCLUSIONS AND LIMITATIONS

No benefits will be payable under this Plan for expenses incurred for the following services and supplies.

1. Provided by any person who is not a Medical Doctor or Psychiatrist (MD), Psychologist (PhD), Osteopath (DO), Podiatrist (DPM), Physician's Assistant (PA), Chiropractor (DC), or Dentist (DDS) legally authorized to practice medicine.

2. Not recommended and approved by a Medical Doctor, Psychiatrist, Psychologist, Osteopath, Podiatrist, Physician's Assistant, Chiropractor or Dentist.

3. Provided by a Chiropractor for dependent spouses or children.

4. Provided by a professional not specifically covered under this Plan, including but not limited to, a marriage, family or child counselor, a licensed clinical social worker, or a Nurse (if billed separately).

5. Received by an employee or dependent during a calendar month when he or she was ineligible for benefits.

6. Not expressly authorized as a benefit under this Plan, including but not limited to hearing aids, artificial devices, air conditioners, humidifiers, purifiers, and other durable medical equipment.

7. Drugs given by injection, with the following exceptions:

(a) Chemotherapy;

(b) Epi-Pen for extreme allergic reactions, like bee stings;

(c) Factor 8 for hemophilia;

31

   (d)   Glucagon to raise very low blood sugar in diabetics;

   (e)   Immunizations for children;

   (f)   Insulin for diabetics.

8.   Confinement for alcohol and drug rehabilitation or mental and nervous conditions except in acute care hospitals, like all other medically necessary confinements.

9.   Confinement for custodial care, or care in an institution, primarily a place of rest for the aged, nursing home or any like institution.

10.   Hospitalization primarily for x-rays, laboratory or other diagnostic studies, except where such services cannot be rendered safely and adequately on an outpatient basis.

11.   Hospitalization primarily for physical therapy or other rehabilitative care.

12.   Oral Surgery or other dental procedures performed and/or any related hospitalization, except for closed or open reduction of fractures or dislocations of the jaw if not covered by the Dental Plan.

13.   Dental care, except those provided under Emergency Dental or as provided by the Dental Plan.

14.   Treatment by any method for jaw joint problems, including temporomandibular joint dysfunction (TMJ) and craniomandibular disorders, or other conditions of the jaw bone, skull, complex of muscles, nerves and other tissues related to that joint.

15.   For eye refractions, glasses, frames, contact lenses, orthoptics, visual training or other eye examinations, except for those provided under the Vision Plan, or those required to diagnose and/or treat medically related diseases of the eye.

16.   Related to myopia surgery, radial keratotomy, or any other type of corrective surgery for myopia.

17.   Personal comfort or beautification items.

18.   Transportation, except by professional ambulance service.

19.   Biofeedback, hypnosis therapy, or pain management.

20.   Whole blood or plasma when such is donated or otherwise replaced.

21.   For which no charge is made or for which an eligible Participant is not required to pay, or is not billed nor would not have been billed except for the fact that he/she had insurance.

22.   Routine physical examinations, including but not necessarily limited to, preventive examinations, well-baby examinations, premarital examinations, or examinations required for licensing, insurance, employment or school admission.

23.   Services required due to an insurrection, war (declared or undeclared) or any act of war and any complications thereof.

24.   Transplant expenses incurred by an organ donor.

25.   Enhancement procedures, services, supplies or medications including but not limited to: weight gain/loss, nutrition counseling, stop-smoking, hair growth, sexual performance, athletic performance, cosmetic purposes, anti-aging purposes or mental performance.

26.   Vitamins, minerals, food supplements, digestive enzymes and substances, natural animal or vegetable substances, bacterial, viral substances or homeopathic preparations.

27.   Homeopathic or holistic treatment.

28.   Allergy treatments and/or injections.

29.   Occupational Therapy and Speech Therapy for any illness or injury.

30.   Treatment of developmental disorders regardless of the cause including medical care, physiotherapy, occupational therapy, speech therapy, and educational services. This exclusion includes autistic diseases of childhood, hyper kinetic syndromes, learning disabilities, behavioral problems, mental retardation, and hospitalization for environmental change.

31.   Charges for breast implants, the removal of breast implants or any complications therefrom.

32.   Associated with an Abortion unless:

   (a)   Certified as medically necessary by a Doctor performing the procedure and by a second Independent Doctor not participating in the procedure, or

   (b)   Certified by the operating Doctor as necessary because of rape or incest.

33.   Related to pregnancy and/or abortion for dependent children.

34.   Associated with treatment for infertility/impotency, sterilization or sterilization reversal, artificial insemination or in-vitro fertilization.

35.   Genetic testing to establish paternity of a child or tests to determine the sex of an unborn child.

36.   Resulting from or related to any drug, device, medical or surgical procedure, which at the sole discretion of the Administrator is considered to be:

   (a)   not medically necessary, or

   (b)   experimental or investigative in nature.

37.   Charges incurred outside of the United States, except for emergency, maternity or those incurred by a Participant enrolled in our MexRx/Mexico program who is treated by a Participating Provider in that program.

38.   Any surgical procedure or other treatment related to complication(s) of a procedure or treatment which is excluded from coverage under this Plan.

39.   Home Health Care or Skilled Nursing Care, except in conjunction with a Large Case Management Program approved in advance by the Administrator and following discharge from an in-patient hospital confinement.

40.   Testing and treatments for sleep disorders.

41.   Fees for specimen handling; medical or legal records; to complete claim forms or other reports; related to late payment of charges; or for missed or broken appointments.

42.   Claims not submitted within 12 months of the date of service.

## THE ROBERT F. KENNEDY FARM WORKERS MEDICAL PLAN
### SUMMARY OF BASIC/MAJOR MEDICAL PLAN BENEFITS

| DESCRIPTION | PLAN | PLAN | PLAN | PLAN |
|---|---|---|---|---|
| Deductible | $0 | $0 | $300 per person, maximum $ per family; Inpatient Hospital and supply only | $100 per person, maximum $ per family, applies to all Covered Health Benefits except Express Scripts |
| Basic Coverage (covered expenses in excess of Basic Coverage limits are not covered under Major Medical Benefits) | | | | |
| Outpatient Diagnostic Laboratory and X-ray Exams (per calendar year) | $750 | $750 | $750 | $750 |
| Physical Therapy (30 visits per calendar year) | $35 | $35 | $35 | $35 |
| Chiropractic (20 visits per calendar year, participants only, no x-rays) | $35 | $35 | $35 | $35 |
| Basic Coverage (covered expenses in excess of Basic Coverage limits applied to Major Medical Benefits) | | | | |
| Physician Visits (up to 12 visits per calendar quarter; includes voluntary second surgical opinions) | $25 then 80% | $25 then 80% | $25 then 80% | $25 then 80% |
| Ambulance (Surface or Air, per calendar year) | $100 then 80% | $100 then 80% | $100 then 80% | $100 then 80% |
| Emergency Room | $75 then 80% | $75 then 80% | Paid as Physician Visit | Paid as Physician Visit |
| Emergency Dental (when not covered by a Dental Care Plan per calendar year) | $75 then 80% | $75 then 80% | $75 then 80% | $75 then 80% |
| Inpatient Hospital (per calendar year) | $1,500 then 80% | $1,500 then 80% | $1,500 then 80% | $1,500 then 80% |
| Surgical (per calendar year; includes Certified Nurse Midwife) | $1,000 then 80% | $1,000 then 80% | $1,000 then 80% | $1,000 then 80% |
| Major Medical (includes covered expenses in excess of Basic Benefits as outlined above plus the following): | | | | |
| Chemo/Radiation Therapy | 80% | 80% | 80% | 80% |
| Kidney Dialysis | 80% | Not covered | Not covered | Not covered |
| Out-of-Pocket Maximum | $5,000 per person, maximum $ per family | N/A | $5,000 per person, maximum $ per family | $5,000 per person, maximum $ per family |
| Percentage Payable after out-of-pocket maximum has been met | 100% | N/A | 100% | 100% |
| Annual Maximum effective 1/1/2002 | $70,000 | $70,000 | $70,000 | $70,000 |
| Lifetime Maximum effective 1/1/2003 | $1,000,000 | $1,000,000 | $1,000,000 | $1,000,000 |

## THE ROBERT F. KENNEDY FARM WORKERS MEDICAL PLAN
### SUMMARY OF BASIC/MAJOR MEDICAL PLAN BENEFITS

| DESCRIPTION | 80% of Covered Expense | 80% of Covered Expense | 80% of Covered Expense | 80% of Covered Expense |
|---|---|---|---|---|
| Non-CCN Hospital and Physician Charges | | | | |
| 1. When a CCN hospital or physician is within 40 miles of participant, or | | | | |
| 2. For an emergency that is not life threatening | | | | |
| Internal Coordination of Benefits (when husband and wife are both an eligible employee and eligible dependent) | Yes | Yes | Yes | Yes |
| Prescription Drugs (per prescription) Generic/Brand Express Scripts Participating Pharmacies | Maximum 30 day supply | Maximum 30 day supply | Maximum 30 day supply | Maximum 30 day supply |
| Generic Copayment | $5 | $5 | $5 | $5 |
| Formulary Copayment - not available (N/A) for all Plans | N/A | N/A | N/A | N/A |
| Brand Copayment (If no generic is available, or physician requires DNS [Do Not Substitute]. In addition, if the patient insists on brand name, then, patient must also pay difference in cost between brand name and generic). | $10 | $10 | $10 | $10 |
| Mail Order Prescription Drugs (per prescription, mandatory Generic), Express Scripts | Maximum 60 day supply | Maximum 60 day supply | Maximum 60 day supply | Maximum 60 day supply |
| Generic Copayment | $0 | $0 | $0 | $0 |
| Formulary Copayment - not available (N/A) for all Plans | N/A | N/A | N/A | N/A |
| Brand Copayment (If no generic is available, or physician requires DNS [Do Not Substitute]. In addition, if the patient insists on brand name, then, patient must also pay difference in cost between brand name and generic). | $5 | $5 | $5 | $5 |
| Non-Participating Retail Pharmacies (full cost of prescription must be paid by patient) | Receipt can be submitted to RFK for an 80% refund, subject to deductible | Receipt can be submitted to RFK for an 80% refund, subject to deductible | Receipt can be submitted to RFK for an 80% refund, subject to deductible | Receipt can be submitted to RFK for an 80% refund, subject to deductible |

Exhibit A, page 9

## THE ROBERT F. KENNEDY FARM WORKERS MEDICAL PLAN
### SUMMARY OF BASIC/MAJOR MEDICAL PLAN BENEFITS

| DESCRIPTION | | | |
| --- | --- | --- | --- |
| Life Insurance (participant only) | | | |
| Death Benefits (Burial Expenses) Participant under age 51 at date of hire | $5,000 | $5,000 | $5,000 |
| Participant age 51 at date of hire | $2,000 | $2,000 | $2,000 |
| Spouse | $5,000 | $5,000 | $5,000 |
| Child age 6 months through 18 years | $1,000 | $1,000 | $1,000 |
| Child age 15 days to 6 months | $200 | $200 | $200 |
| Child age 6 months through 18 years | $1,000 | $1,000 | $1,000 |
| Child age 15 days to 6 months | $200 | $200 | $200 |
| Participant age 51 but less than 61 at date of hire | $1,000 | $1,000 | $1,000 |
| Spouse | $500 | $500 | $500 |
| Participant greater than age 61 at date of hire | $1,000 | $1,000 | $1,000 |
| Spouse | $500 | $500 | $500 |

## THE ROBERT F. KENNEDY FARM WORKERS MEDICAL PLAN
### SUMMARY OF MAJOR MEDICAL PLAN BENEFITS

| DESCRIPTION | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Deductible | $0 | $0 | $0 | $100 per person, family; max 3 per person, family; applies to all Covered Health Benefits except Express Scripts | $300 per person, family; applies to all Covered Inpatient & surgery only | $300 per person, family; applies to all Covered Inpatient & surgery only | $150 per person, family; max 3 per person, family; applies to all Covered Health Benefits except Express Scripts |
| Outpatient Diagnostic Laboratory & X-Ray (up to $750 per calendar year) | 80% | 80% | 80% | 80% | 80% | 80% | 80% |
| Physical Therapy (up to $35 per visit, 30 visits per calendar year) | 80% | 80% | 80% | 80% | 80% | 80% | 80% |
| Chiropractic (up to $35 per visit, 20 visits per calendar year; participant only, no x-ray) | 80% | 80% | 80% | 80% | 80% | 80% | 80% |
| Physician Visits (up to 12 visits per calendar quarter; includes voluntary second surgical opinions) | 80% | 80% | 80% | 80% | 80% | 80% | 80% |
| Ambulance (Surface or Air) | 80% | 80% | 80% | 80% | 80% | 80% | 80% |
| Emergency Room | 80% | 80% | 80% | 80% | Paid as Physician Visit | Paid as Physician Visit | Paid as Physician Visit |
| Emergency Dental (when not covered by a Dental Care Plan, per calendar year) | 80% | 80% | Not covered | Not covered | Not covered | Not covered | Not covered |
| Inpatient Hospital | 80% | 80% | 80% | 80% | 80% | 80% | 80% |
| Surgery (includes Certified Nurse Midwife) | 80% | 80% | 80% | 80% | 80% | 80% | 80% |
| Chemo/Radiation Therapy | 80% | 80% | 80% | 80% | 80% | 80% | 80% |
| Kidney Dialysis | Not covered | Not covered | Not covered | Not covered | Not covered | Not covered | Not covered |
| Out-of-Pocket Maximum | $5,000 per person, max 3 per family | $5,000 per person, max 3 per family | N/A | N/A | $5,000 per person, max 3 per family | N/A | $5,000 per person, max 3 per family |
| Percentage payable after Out-of-Pocket Maximum has been met | 100% | 100% | 100% | 100% | 100% | 100% | 100% |
| Annual Maximum effective 1/1/2003 | $70,000 | $70,000 | $70,000 | $70,000 | $70,000 | $70,000 | $70,000 |
| Lifetime Maximum | $1,000,000 | $1,000,000 | $1,000,000 | $1,000,000 | $1,000,000 | $1,000,000 | $1,000,000 |

Exhibit A, page 10

## THE ROBERT F. KENNEDY FARM WORKERS MEDICAL PLAN
### SUMMARY OF MAJOR MEDICAL PLAN BENEFITS

| DESCRIPTION | Plan | Plan | Plan | Plan | Plan | Plan |
|---|---|---|---|---|---|---|
| 1. Hospital and Physician Charges — Non-CCN — When a CCN hospital or physician is within 40 miles of participant; or — 2. For an emergency that is not life threatening | 50% of Covered Expense | 50% of Covered Expense | 50% of Covered Expense | 50% of Covered Expense | 50% of Covered Expense | 50% of Covered Expense |
| Internal Coordination of Benefits (when husband and wife are both an eligible employee and eligible dependent) | Yes | Yes | Yes | Yes | Yes | Yes |
| Prescription Drugs (per prescription, mandatory Generic) Express Scripts Participating Pharmacies | Max 30 day supply | Max 30 day supply | Max 30 day supply | Max 30 day supply | Max 30 day supply | Max 30 day supply |
| Generic Copayment | $5 | $5 | $5 | $10 | $5 | $5 |
| Formulary Copayment - not available (N/A to all Plans) | N/A | N/A | N/A | N/A | N/A | N/A |
| Brand Copayment (if no generic is available, or physician requires DNS (Do Not Substitute); in addition, if the patient insists on brand name and generic) | $10 | $10 | $10 | $30 | $10 | $10 |
| Mail Order Prescription Drugs (per prescription, mandatory Generic) Express Scripts | Max 60 day supply | Max 60 day supply | Max 60 day supply | Max 60 day supply | Max 60 day supply | Max 60 day supply |
| Generic Copayment | $0 | $0 | $0 | $10 | $0 | $0 |
| Formulary Copayment - not available (N/A to all Plans) | N/A | N/A | N/A | $15 | N/A | N/A |
| Brand Copayment (if no generic is available, or physician requires DNS (Do Not Substitute); in addition, if the patient insists on brand name, then, patient must also pay difference in cost between brand name and generic) | $5 | $5 | $5 | $30 | $5 | $5 |
| Non-Participating Retail Pharmacies (full cost of prescription must be paid by patient) | Receipt can be submitted to RFK for an 80% refund, subject to deductible | Receipt can be submitted to RFK for an 80% refund, subject to deductible | Refund not available | Receipt can be submitted to RFK for an 80% refund, subject to deductible | Receipt can be submitted to RFK for an 80% refund, subject to deductible | Receipt can be submitted to RFK for an 80% refund, subject to deductible |

38

## THE ROBERT F. KENNEDY FARM WORKERS MEDICAL PLAN
### SUMMARY OF MAJOR MEDICAL PLAN BENEFITS

| DESCRIPTION | Plan | Plan | Plan | Plan | Plan | Plan |
|---|---|---|---|---|---|---|
| Life Insurance (Participant only) / Death Benefits (Burial Expense) — Participant under age 51 at date of hire | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 |
| Participant age 51 but less than 61 at date of hire | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 |
| Participant greater than age 61 at date of hire | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 |
| Spouse | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 |
| Child age 15 days to 6 months | $200 | $200 | $200 | $200 | $200 | $200 |
| Child age 6 months through 18 years | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 |
| Child age 6 months through 18 years | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 |
| Spouse | $500 | $500 | $500 | $500 | $500 | $500 |

39

## THE ROBERT F. KENNEDY FARM WORKERS MEDICAL PLAN
## SUMMARY OF MAJOR MEDICAL PLAN BENEFITS

| | | |
|---|---|---|
| Deductible | $150 per person, max 3 per family, applies to all Covered Health Benefits except Express Scripts | $150 per person, max 3 per family, applies to all Covered Health Benefits except Express Scripts |
| Outpatient Diagnostic Laboratory & X-Ray (up to $500 per calendar year) | 80% | 80% |
| Physical Therapy (up to $35 per visit, 20 visits per calendar year) | 80% | 80% |
| Chiropractic (up to $25 per visit, 20 visits per calendar year; participant only, no x-ray) | 80% | 80% |
| Physician Visit (up to 12 visits per calendar quarter; includes voluntary second surgical opinions) | 80% | 80% |
| Ambulance (Surface or Air) | 80% | 80% |
| Emergency Room | Paid as Physician Visit | Paid as Physician Visit |
| Emergency Dental (when not covered by a Dental Care Plan per calendar year) | 80% | 80% |
| Inpatient Hospital | 80% | 80% |
| Surgery (includes Certified Nurse Midwife) | 80% | 80% |
| Chemo/Radiation Therapy | 80% | 80% |
| Kidney Dialysis | Not Covered | Not Covered |
| Out-of-Pocket Maximum | $5,000 per person, max 3 per family | Not Covered |
| Percentage payable after Out-of-Pocket Maximum has been met | 100% | N/A |
| Annual Maximum effective 1/1/2002 | $70,000 | $70,000 |
| Lifetime Maximum effective 1/1/2003 | $1,000,000 | $1,000,000 |
| Non-CCN Hospital and Physician Charges<br>1.  When a CCN Hospital or physician is within 40 miles of participant, or<br>2.  For an emergency that is not life threatening | 50% of Covered Expense | 50% of Covered Expense |
| Internal Coordination of Benefits (when husband and wife are both an eligible employee and eligible dependent) | Yes | Yes |

40

## THE ROBERT F. KENNEDY FARM WORKERS MEDICAL PLAN
## SUMMARY OF MAJOR MEDICAL PLAN BENEFITS

| | | |
|---|---|---|
| Prescription Drugs (per prescription, mandatory Generic)<br>Express Scripts Participating Pharmacies | Max 30 day supply | Max 30 day supply |
| Generic Copayment | $5 | $5 |
| Formulary Copayment - not available (N/A) for all Plans | N/A | N/A |
| Brand Copayment<br>(if no generic is available, or physician requires DNS (Do Not Substitute)) In addition, if the patient insists on brand name, then patient must also pay difference in cost between brand name and generic) | $10 | $10 |
| Mail Order Prescription Drugs (per prescription, mandatory Generic)<br>Express Scripts | Max 60 day supply | Max 60 day supply |
| Generic Copayment | $0 | $0 |
| Formulary Copayment - not available (N/A) for all Plans | N/A | N/A |
| Brand Copayment<br>(if no generic is available, or physician requires DNS (Do Not Substitute)) In addition, if the patient insists on brand name, then patient must also pay difference in cost between brand name and generic) | $5 | $5 |
| Non-Participating Retail Pharmacies<br>(full cost of prescription must be paid by patient) | Receipt can be submitted to RFK for an 80% refund, subject to deductible | Receipt can be submitted to RFK for an 80% refund, subject to deductible |
| Death Benefits (Burial Expense)<br>Participant until age 61 at date of hire | | |
| Participant | $2,000 | $2,000 |
| Life Insurance (Participant only) | $6,000 | $6,000 |
| Spouse | $1,000 | $1,000 |
| Child age 6 months through 18 years | $1,000 | $1,000 |
| Child age 15 days to 6 months | $200 | $200 |
| Participant age 61 but less than 61 at date of hire | $1,000 | $1,000 |
| Spouse | $500 | $500 |
| Child age 6 months through 18 years | $1,000 | $1,000 |
| Child age 15 days to 6 months | $200 | $200 |
| Participant greater than age 61 at date of hire | $500 | $500 |
| Spouse | $500 | $500 |

41

Exhibit A, page 12

# EXHIBIT B

to Declaration of Richard Vera in Support of Motion to Dismiss

Case No.  08 CV 0747 WQH CAB



Client Name: <u>Robert F. Kennedy Medical Plan</u>

## CCN PAYOR BASE AGREEMENT

This CCN Payor Base Agreement is made and entered into effective <u>October 1, 2002,</u> by and between CCN Managed Care, Inc., a Delaware corporation ("CCN") and <u>Robert F. Kennedy Medical Plan.</u>

### DEFINITIONS

A.  "<u>CCN</u>" is a managed healthcare organization that provides group health, workers' compensation, international travelers', managed auto, disability management and other managed health care services and programs ("CCN Services") to self-insured employers, third party administrators, insurance companies and other companies which administer, process, provide or secure access to covered health care services or benefits to Covered Members.

B.  "<u>Payor</u>" is a self-insured employer, third party administrator, insurance company, health services plan, trust, nonprofit facility service plan, any governmental unit and/or any other entity, which has an obligation to administer, process, provide or secure access to covered health care services or benefits to Covered Members.

C.  "<u>Covered Member</u>" is any beneficiary, claimant, or injured worker that Payor identifies as being eligible for coverage under this CCN Payor Base Agreement or any addendum and/or addenda hereto.

### AGREEMENT

Payor desires to have CCN provide CCN Services to Payor and Payor's Covered Members. Now therefore, in consideration of the mutual covenants, terms and conditions herein contained and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1.  Base Agreement, Services to be Provided and Additional Terms and Conditions

Certain additional terms and conditions under which Payor is contracting with CCN are contained in a separate addendum and/or addenda reduced to writing and signed by each of the parties (together with the CCN Payor Base Agreement, this "Agreement"). The terms and conditions set forth in the separate addendum and/or addenda are incorporated herein by this reference. Throughout the term of this Agreement, CCN shall provide those CCN Services set forth herein. No amendment, modification, or supplement to the CCN Payor Base Agreement, the addendum and/or addenda shall be binding on any of the parties unless it is reduced to writing and signed by each of the parties. In the event that a conflict arises between the CCN Payor Base Agreement and any addendum regarding any services to be provided by CCN, the terms and conditions of the addendum shall control, except for Section 2 of the CCN Payor Base Agreement.

2.  Minimum Annual Fee

Notwithstanding any other provision, services provided under this Agreement are subject to an annual minimum payment of twenty five thousand dollars ($25,000) by Payor to CCN ("Minimum Annual Fee"). At the end of each agreement year, CCN will calculate the fees paid by Payor during the agreement year. If in any agreement year the Minimum Annual Fee is not met, CCN will notify Payor and Payor will pay CCN, within 30 days of receipt of the notice from CCN, the greater of: (1) the difference between the actual fees Payor incurred during the agreement year and the amount Payor actually paid during the agreement year; or (2) the difference between $25,000 and the amount Payor actually paid during the agreement year.

3.    Compensation

3.1    CCN shall bill Payor for the CCN Services set forth in the addendum and/or addenda. Payor shall remit the fee for CCN Services to CCN (along with a statement verifying the current number of Covered Members) no later than thirty (30) calendar days after the date on the CCN invoice. In the event Payor does not remit to CCN within the thirty (30) calendar day period, interest shall accrue on the outstanding balance from the due date at the rate of eighteen percent (18%) per annum or the maximum allowed by law.

3.2    Annual Fee Increase.  On or after the annual anniversary date of the Agreement, CCN may increase the fees for services within sixty (60) calendar days of the written notice to Payor of these increases.  Unless affirmatively rejected in writing by Payor on or before the sixtieth (60th) calendar day following notice provided by CCN, the increases are deemed accepted by Payor.

3.3    CPI Increase.  In addition to the fee increase set forth above in Section 3.2, CCN will annually adjust all fees that are charged on an hourly, per capita, per case, per bill, per claim or per unit basis, by giving 60 days notice to Payor prior to the anniversary date of each year of this Agreement. Such fees for the next year of the Agreement will be increased by an amount equal to the percentage difference between the annual average of the CPI available for the most recently published year, and the annual average of the CPI available for the year prior to the most recently published year.  For purposes of this Agreement, the term "CPI" means the Consumer Price Index - All Urban Consumers, Medical Care Services, Base Period: 1982-1984=100, Not Seasonally Adjusted.  If the methodology for calculating the CPI is substantially revised, CCN will make an adjustment to such fees to produce results equivalent, as nearly as reasonably possible, to those which would have been obtained if the methodology for calculating CPI had not been so revised.

3.4    Audit.  Subject to the confidentiality provisions set forth in Article 5, Payor agrees that at its office, during normal business hours, and upon not less than 30 days advance notice, CCN will have the right to examine records which Payor has kept which relate directly to services received pursuant to this Agreement. Subject to Article 5, CCN agrees that at its office, during normal business hours, and subject to CCN's standard audit procedures, Payor will have the right to examine records which CCN has kept which relate directly to services provided pursuant to this Agreement. The auditing party will provide a summary of the final results of such audit or examination to the other party. For services provided by CCN, such right of examination will continue for a period of not less than two years after the date of discharge, end of treatment, or the end of CCN's services in relation to the specific episode of care.  The auditing party agrees to pay the other party for its costs incurred in supporting such audits at the audited party's then-current audit fees. CCN may require Payor's representatives to execute a confidentiality agreement prior to commencing any such audit.  No party is entitled to conduct an audit more frequently than twice per calendar year, except as reasonably necessary to follow-up on previous findings.

4.    Term and Termination

4.1    Term.  The term of this Agreement including the addendum and/or addenda shall be for ~~three (3) years,~~ one (1) year commencing on the date first set forth above.  This Agreement shall be automatically extended for successive renewal periods of ~~three (3) years~~ one (1) year each, unless otherwise terminated herein.

4.2    Termination By Payor.  This Agreement may be terminated by written notice thereof given by Payor to CCN if any one of the following occurs:

4.2.1    Failure of CCN to meet any material covenant, agreement, or obligation provided for in this Agreement if it has not commenced to cure any such default within 20 days and has not cured such default within 90 days after written notice thereof to CCN by Payor.

4.2.2    CCN becomes insolvent or is adjudicated as a bankrupt entity, or its business comes into possession or control of any trustee in bankruptcy, or a receiver is appointed for it, or it makes a general assignment for the benefit of creditors.  If any of these events occurs: (a) no interest in this Agreement may be deemed

an asset of creditors; (b) no interest in this Agreement may be deemed an asset or liability of CCN; and (c) no interest in this Agreement may pass by the operation of law without the consent of Payor.

4.2.3   Payor gives not less than six months written notice to CCN prior to the end of the Term. Such termination will be effective at the expiration of the then-current Term.

4.3    Termination By CCN.   This Agreement may be terminated, in part or in whole, by written notice thereof given by CCN to Payor if any one of the following occurs:

4.3.1   Failure of Payor to meet any material covenant, agreement, or obligation provided for in this Agreement if it has not commenced to cure any such default within 20 days and has not cured such default within 90 days after written notice thereof to Payor by CCN.

4.3.2   Failure of Payor to make payment under this Agreement when due, and if payment is not made within 20 days following written notice of non-payment sent by CCN to Payor.

4.3.3   Payor becomes insolvent, or is adjudicated as a bankrupt entity, or its business comes into possession or control, even temporarily, of any trustee in bankruptcy, or a receiver is appointed for it, or it makes a general assignment for the benefit of creditors.   If any of these events occurs: (a) no interest in this Agreement may be deemed an asset of creditors; (b) no interest in this Agreement may be deemed an asset or liability of Payor; and (c) no interest in this Agreement may pass by operation of law without the consent of CCN.

4.3.4   CCN gives not less than six months written notice to Payor prior to the end of the Term. Such termination will be effective at the expiration of the then-current Term.

4.4    Post-Termination Rights and Responsibilities.   Termination of this Agreement shall not terminate rights and obligations of the parties, which by their nature extend beyond the term. Upon termination, Payor shall promptly notify or shall direct its claims administrator to promptly notify Covered Members of such termination.

5.    Relationship of the Parties

5.1    Independent Contractor Relationship.   The relationship between CCN and Payor is one of independent contractors.   Nothing herein is intended to create nor shall be deemed or construed to create any relationship between the parties other than that of independent contractors. Neither of the parties, nor any of their respective officers, directors, employees, agents or representatives shall act as nor be construed to be the partner, agent, employee, or representative of the other.

5.2    Payment of Claims.   Payor shall retain full responsibility for all medical benefits, temporary and permanent disability benefits, death benefits, medical-legal expenses, vocational rehabilitation, and any other expenses or services which are required to be paid or provided under applicable state and federal laws. CCN is not a claims administrator, and is engaged hereunder solely for the purpose of making recommendations with respect to provision and payment of medical benefits.   Payor retains full responsibility for all final determinations regarding the obligation of Payor or any other person to pay for or otherwise provide benefits to Covered Members, including without limitation claims by or against employers, Covered Members, members of the CCN network, facilities, providers or other health care service providers.

6.    Protection of Confidential Information

6.1    License to Use CCN Materials.   CCN may from time to time provide to Payor certain materials, brochures, reporting forms, and other related material, whether in a printed or electronic format, in connection with CCN's provision of the CCN Services. CCN grants to Payor a non-exclusive license to use these materials during the term of this Agreement including the addendum and/or addenda.

6.2     Confidential Proprietary Information.

6.2.1 "Confidential Proprietary Information" means any non-public proprietary information, including, but not limited to, the terms of this Agreement, information about fees, computer software, business procedures and manuals, data review criteria, passwords to CCN's Internet site, CCN network, facilities and providers databases and directories and contract provider rates. For purposes of this Agreement, Confidential Proprietary Information does not include: (a) information publicly available by means other than wrongful disclosure or lawfully obtained from third parties without any confidentiality obligations; (b) information which is required by law or by a government agency to be disclosed by a party, provided that such party immediately notifies the other party of the requirements for such disclosure and reasonably cooperates in obtaining any protective order desired by the other party with regard to such information; (c) information independently developed by the other party; or (d) information provided to the other party with the intention that it be published, disseminated, released or distributed by such other party to a Covered Member, the CCN network, facilities and providers, or to the general public.

6.2.2 The parties agree that all Confidential Proprietary Information of each party may not be disclosed, except as provided below, without the express written approval of the other party. Further, Confidential Proprietary Information may be disclosed only to those persons who need to know, and only to the extent necessary, in order to carry out the terms of this Agreement. Confidential Proprietary Information may not be used in any way not specifically allowed under this Agreement, including in each party's own business, whether or not competitive with the other party. Each party will notify the others of any loss or accidental or unauthorized disclosure of Confidential Proprietary Information.

6.2.3 The parties recognize that no remedy of law may be adequate to compensate a party for a breach of the provisions of this Article; therefore, all parties agree that a party may seek temporary and permanent injunctive relief against the breaching party, in addition to all other remedies which either is otherwise entitled, and this Section in no way limits such other remedies of the parties. Such temporary or permanent injunctive relief may be granted without bond, which each party does hereby waive.

6.3     Confidential Health Information.

6.3.1 The parties agree that legal and professional considerations require that all Confidential Health Information be kept confidential, and each party agrees to comply with all applicable federal and state laws governing the confidentiality of Confidential Health Information. "Confidential Health Information" means Covered Members' non-public health or personal information related to a health condition or the provision of care or payment for care for a health condition coupled with information which allows the identification of the Covered Members or Payor. In connection with the receipt, disclosure or other transfer of Confidential Health Information among Covered Members' health care services providers, Payor and/or those authorized representatives of Payor ("Payor-Authorized Designees") as necessary in connection with the performance of duties under this Agreement or upon Payor's request or approval (each, a "Confidential Health Information Transfer"), Payor will obtain valid authorization permitting the Confidential Health Information Transfer ("Release Authorization"). If Payor requests or approves of CCN to perform a Confidential Health Information Transfer, under the provisions of this Agreement or by other means, such request or approval constitutes Payor's representation and warranty that the requested Confidential Health Information Transfer is to, or on behalf of, an authorized representative for a lawful purpose and Payor has obtained the appropriate Release Authorization(s). Payor will indemnify, defend and hold CCN harmless from and against any and all liabilities, damages, claims, actions and costs (including, without limitation, attorneys' and expert witnesses' fees and costs) arising out of, or related to, a Confidential Health Information Transfer by CCN in reliance upon the above representation and warranty. Notwithstanding the above, Payor may be required to provide substantiation of the applicable Release Authorization(s) prior to a Confidential Health Information Transfer.

6.3.2 Payor agrees that CCN may release Confidential Health Information: (a) to the Covered Member to whom such information pertains, or his/her legal guardian or other representative, upon receipt of written authorization from such Covered Member; and (b) as required by order of a court or administrative agency with jurisdiction in the matter.

Exhibit B, page 16

7.    <u>Third-Party Indemnification</u>

Should CCN incur any costs, expenses, judgments, damages, liabilities, legal fees, or other reasonable costs of litigation or defense of any claim, including reasonable attorneys' fees and costs (collectively, "Costs or Liabilities"), whether in settlement of any cause of action or threatened cause of action, which settlement Payor approves, or as a result of an order or judgment of a court of competent jurisdiction, which Costs or Liabilities do not result or arise from any negligence or intentional act of misconduct of CCN, Payor agrees to indemnify, hold harmless and reimburse CCN to the extent of any such Costs or Liabilities.

8.    <u>General Provisions</u>

8.1    <u>Notices</u>.  All notices which are required or permitted to be given pursuant to this Agreement shall be in writing and shall be sufficient in all respects if delivered personally, by electronic facsimile (with a confirmation by registered or certified mail placed in the mail no later than the following business day), or by registered or certified mail, postage prepaid, addressed to a party as indicated below:

If to CCN:
CCN Managed Care, Inc.
5251 Viewridge Court
San Diego, California 92123
Attn:  President
Fax:  (858) 278-1262
cc:
First Health Group Corp.
3200 Highland Avenue
Downers Grove, Illinois 60515
Attn:  General Counsel
Fax:  630-737-7518

If to Payor:
Robert F. Kennedy Medical Plan
P.O. Box 47
Keene, CA 93531
Attn:  Douglas Blaylock, Administrator
Facsimile No.:  (661)822-6286

Notice shall be deemed to have been given upon transmittal thereof as to communications which are personally delivered or transmitted by electronic facsimile and, as to communications made by United States mail, on the third (3rd) business day after mailing.  The above addresses may be changed by giving notice of such change in the manner provided above for giving notice.

8.2    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois applicable to agreements made and to be performed wholly within that state, irrespective of such state's choice-of-law principles.

8.3    <u>Partial Invalidity</u>.  If any provision of this Agreement is held to be illegal or unenforceable by a court of competent jurisdiction, the remaining provisions will remain in effect and the illegal or unenforceable provision will be modified so as to conform to the original intent of this Agreement to the greatest extent legally permissible.  Notwithstanding the foregoing, if any such modification causes a material change in the obligations or rights of any party, upon written notice from one party to the other of the adverse effect thereof upon such notifying party, and then if the parties are not able to mutually agree as to an amendment hereto, any party may terminate this Agreement upon 30 days written notice to the other parties.

8.4    <u>Assignment and Delegation</u>.  No party may assign its rights or duties under this Agreement without the prior written consent of the other, except that CCN may assign this Agreement or its rights and duties under this Agreement to a different subsidiary or affiliate of CCN, provided that such assignment will not relieve CCN of its respective liabilities under this Agreement.  Payor acknowledges that certain services may be performed by affiliates of CCN, and CCN expressly delegates its obligations herein to perform such services to certain designated affiliates, provided that such delegation will not relieve CCN of any liability under this Agreement.  This Agreement is binding upon and will inure to the benefit of the respective parties hereto and their successors and permitted assigns.



8.5    No Third Party Rights.  This Agreement has been made and is made solely for the benefit of the parties hereto and their respective successors and permitted assigns.  Nothing in this Agreement is intended to confer any rights or remedies under or by reason of this Agreement on any persons other than the parties to it and their respective successors and permitted assigns.  Nothing in this Agreement is intended to relieve or discharge the obligation or liability of any third persons to any party to this Agreement.

8.6    Non-Exclusivity.  Payor acknowledges that CCN offers its services on a national basis, including to businesses, which may be competitive with Payor.  Payor agrees that nothing, whether contained in this Agreement or otherwise, limits, restricts or prevents CCN from providing their services to any other entity.

8.7    Insurance.  Each party will, so long as such coverage is available in the market and at a reasonable cost within each party's judgment, at all times for the Term maintain in effect professional liability insurance.

8.8    Compliance.  Each party will comply with all applicable licensing and regulatory requirements for each state in which CCN provides services to Payor under this Agreement.  Upon request by the other party, each party will promptly provide to the requesting party such information and documentation as the requesting party deems necessary for its compliance with applicable licensing and regulatory requirements.

8.9    Force Majeure.  The obligations of any party under this Agreement will be suspended for the duration of any force majeure applicable to that party.  The term "force majeure" means any cause not reasonably within the control of the party claiming suspension, including, without limitation, an act of God, industrial disturbance, war, riot, weather-related disaster, earthquake, governmental action and unavailability or breakdown of equipment.  The party claiming suspension under this Section 8.9 will take reasonable steps to resume performance as soon as possible without incurring unreasonably excessive costs.

8.10    Entire Agreement; Amendments; Facsimile.  This Agreement, including any riders, addendum, attachments or amendments hereto, constitutes the entire agreement among the parties.  This Agreement supersedes any prior agreement or understandings pertaining to the services provided hereunder, whether oral or written, and may be amended only by a writing executed by authorized representatives of CCN and Payor.  A facsimile or other reproductive type copy of this Agreement, so long as signed by all parties, will be considered an original and will be fully enforceable against all parties.

8.11    Headings.  All headings are for convenience only and may not be deemed to limit, define or restrict the meaning or contents of the Articles and Sections.

8.12    Use of Marks.  No party may in any way infringe upon or harm the rights of any other party in their service marks, trademarks, copyrights, and other proprietary marks.  No party may, without the prior written approval of any other party, use any mark or name of that other party.  Notwithstanding the foregoing, this provision does not prohibit Payor from identifying CCN as its vendor of health benefits services, from using certain materials provided by CCN pursuant to Section 6.1, nor prohibit CCN from identifying Payor as a party to whom CCN is providing such services.

8.13    Hiring Restrictions.  Except with the other party's written consent, for the Term and for a period of 12 months thereafter, neither party may hire any employee of the other party as an employee or consultant.  For the purpose of this Section, an "employee of the other party" is any actual employee or any employee who has terminated employment within the last 12-month period.

8.14    Waiver.  A waiver of a breach or default under this Agreement is not a waiver of any other or subsequent breach or default.  A failure or delay in enforcing compliance with any term or condition of this Agreement does not constitute a waiver of such term or condition unless it is expressly waived in writing.

8.15    Negotiated Agreement.  Each party acknowledges that this Agreement resulted from negotiations by and among all parties, and therefore any rule of construction requiring ambiguities to be construed against the drafter of an agreement will not apply to any provision of this Agreement.

8.16    Survivability.    The provisions of Sections 3.3 and 4.4 and Articles 2, 3, 6, 7 and 8 will survive the termination of this Agreement.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first written above.

CCN Managed Care, Inc.                                    Robert F. Kennedy Medical Plan

Signed: _____                           Signed: _____

Name: **Blaine Faulkner**                               Name: DOUGLAS L. BLAYLOCK

Title: **Vice President**                               Title: ADMINISTRATOR

Date: 6/20/02                                           Date: 10/30/2002

Exhibit B, page 19

Group Health
Addendum GS2
CCN Network Access
For Leased/Semi-Leased Clients

This Addendum to the CCN Payor Base Agreement is intended to define the additional terms and conditions under which Payor shall contract for and CCN shall provide access to the CCN Network (where the Payor or its designee will re-price their own bills according to the CCN Contract Rates) and shall become effective October 1, 2002.

## 1.    Definitions

1.0    All definitions set forth in the CCN PAYOR BASE AGREEMENT are incorporated herein by reference in this addendum.

1.1    "Affiliated Entity" is an independent contractor with which CCN contracts for access to Preferred Provider networks or other health care services.

1.2    "Administrative Manual" shall mean the Administrative Procedures and Policies for Payors, a copy of which will be provided to the Payor upon execution of this Agreement and which is incorporated herein by this reference insofar as it pertains to the CCN Services specified in this Agreement and Payor's responsibilities with respect thereto.

1.3    "CCN Affiliated Health Plan" is the plan, program or policy offered, sponsored, administered or insured by Payor to provide coverage for health care services or benefits to a Covered Member. This includes a plan, program or policy designed to provide coverage for health care services provided through a group health, workers' compensation, international travelers, managed auto, disability management, or other managed health care arrangement.

1.4    "CCN Network " shall mean the network of all Facilities and Professional Providers with which CCN or an Affiliated Entity has entered into a Provider Contract.

1.5    "CCN Network Provider" shall mean a physician or other health care practitioner or health care service provider who has agreed to provide Covered Services to Covered Members through the CCN Network.

1.6    "CCN Facility" shall mean a facility that has agreed to provide Covered Services to Covered Members.

1.7    "CCN Contract Rates" are the CCN Facility and CCN Network Provider rates, rate structures and pricing methodologies released by CCN to Payor for the purposes of Re-Pricing.

1.8    "Covered Services" shall mean those health care services for injuries, illnesses or conditions, if any, which CCN Providers shall be obligated to provide for Covered Members pursuant to this Agreement.

1.9    "Leased Client" is a Payor or its designee to which CCN has delegated Re-Pricing for bills submitted by a CCN Facility or CCN Network Provider.

1.10    "Provider Contract" shall mean a contract between CCN and a CCN Network Provider or CCN Facility for the provision of Covered Services to Covered Members.

1.11    "Re-Pricing" is the calculation and application of the CCN Contract Rates to claims submitted by a CCN Facility or CCN Network Provider for health care services provided to a Covered Member in order to determine the reimbursement amounts to be paid for such services.

Exhibit B, page 20

1.12    "Service Area" refers to the state(s) in which Payor is contracted to use CCN Networks.

1.13    "Semi-Leased Client" is a Payor or its designee to which CCN has delegated Re-Pricing for bills submitted by a CCN Network Provider.

## 2.    Covenants of CCN

2.1    Distribution of CCN Contract Rates.  On a monthly basis, CCN will distribute the rates for each CCN Facility and/or CCN Network Provider to Payor's designated contact.  Such rates shall be furnished in CCN's standard format, unless an alternative format and the associated fees have been mutually agreed upon.

2.2    No Billing of Covered Members.  CCN shall contractually prohibit members of the CCN Network from billing Covered Members directly for Covered Services provided to such Covered Members.

2.3    Use of Independent Contractors.  Some services offered by CCN are rendered by independent contractors, which includes Affiliated Entities.  CCN shall use its best efforts to maintain the availability of these services throughout the course of this Agreement.

2.4    Withdrawal of Independent Contractors.  In the event that any independent contractor terminates its relationship with CCN, loses its applicable license or powers to perform its service contract with CCN, or ceases to do business in the Service Area, that service provided by such independent contractor shall be deleted from this Addendum immediately upon any such event, and the CCN administrative fee applicable to such services as set out in this Agreement shall not be due from Payor from the date of that event.  Such event shall be deemed a Termination Event.

2.5    Bankruptcy of Independent Contractors.  In the case that an independent contractor files for bankruptcy under the laws of the United States, Payor shall not be relieved of its obligations to pay CCN for the services provided under this Agreement until such time as CCN is relieved of its obligations to the independent contractor by a Federal Bankruptcy Court having jurisdiction over the matter.    Upon discharge of CCN by such court, that service shall be deleted from this Agreement immediately, and the CCN administrative fee applicable to such service as set out in this Agreement, shall not be due from a Payor from the date of that event.  The discharge event shall be deemed a termination event for purposes of this Agreement.

2.6    Replacement of Independent Contractors.  CCN shall apply all reasonable efforts to find a replacement independent contractor of comparable cost, quality and availability prior to any termination of an independent contractors' relationship with CCN.  CCN shall have up to ninety (90) calendar days after such a termination in which to offer Payor the same service by a different independent contractor, which Payor shall have the option of accepting or rejecting at the same contract price.  CCN is not, however, obligated to replace any service after a termination event.

2.7    Complaints and Grievance Process.  CCN shall maintain a formal complaint and grievance process in accordance with applicable statute and regulation.

2.8    Quality Improvement.  CCN shall maintain a quality improvement program in accordance with state rules and regulations.

2.9    Credentialing.  CCN shall be responsible for maintaining a provider credentialing program.  At CCN's option, CCN may delegate credentialing to another entity.  CCN shall provide Payor a summary of CCN's credentialing plan, including it's credentialing and recredentialing standards, upon written request by Payor.

Exhibit B, page 21

2.10    Nominations. Upon receipt of a documented request from the Payor or Covered Member, CCN shall use its best efforts to add to existing networks those providers, which Payor or Covered Member desires to be part of the CCN Network, in accordance with CCN's network development and credentialing criteria. CCN may require a period of thirty (30) business days to obtain the completed applications from a targeted provider and an additional ninety (90) business days in which to add the targeted providers.

## 3.    Covenants of Payor

3.1    Determination of Qualification. Payor agrees to fully cooperate with CCN in order to determine whether Payor meets CCN's qualifying criteria to receive CCN's Contract Rates for CCN Facilities and/or CCN Network Providers.

3.2    Confidentiality. During the term of this Attachment and for a period of two years after the termination of this Attachment, Payor may not utilize CCN Leased Facility/Professional Provider Contract Rate information to (i) establish or assist in the establishment of its own preferred provider organization network or similar arrangement, or (ii) directly or indirectly through another purchaser, plan, Payor or preferred provider organization network, solicit or negotiate preferred provider agreements or arrangements with any health care provider who participate or has participated in any CCN Network at any time.

3.3    Designated Contact. Payor agrees to identify a designated contact to oversee and coordinate the implementation of the CCN Contract Rate process. CCN and Payor will identify designated contacts who will be responsible for distribution, receipt and retrieval of Payor, CCN Facility and CCN Network Provider data.

3.4    Staff Training. Payor agrees to include all appropriate staff in training activities presented by CCN personnel concerning the interpretation and application of CCN Contract Rates, which must be completed, by Payor's staff prior to Re-Pricing CCN Network professional/facility claims and as needed thereafter.

3.5    Approved Marketing Collaterals. Payor will use only those approved CCN marketing collaterals when marketing products utilizing the CCN Network and will make no representation inconsistent with these materials.

3.6    Administrative Manual. Payor shall comply or direct its claims administrator to comply with the CCN administrative procedures specified in the CCN Administrative/Instructional Manual, as amended from time to time. A copy of the CCN Administrative/Instructional Manual shall be provided to Payor upon execution of this Agreement, upon Payor's request, and is incorporated herein by this reference.

3.7    Exclusive PPO Network Providers. Payor agrees to designate CCN Network Providers, and only them, as the Preferred Providers for the Covered Members in the Service Areas. Payor may not offer competing preferred provider organizations to the same group of Covered Members in the same Service Area.

3.8    Exclusive PPO Network. Payor agrees that CCN shall be the exclusive Preferred Provider organization network utilized by Payor for its Covered Members under its CCN Affiliated Health Plan in their Service Area(s) identified. Payor agrees that it shall not contract directly with health care providers in such Service Areas.

3.9    Notification to Covered Members. Payor agrees to notify Covered Members of the name and location of the CCN Network Providers, and to actively encourage Covered Members to use the CCN Network Providers if health care services are medically necessary in the Service Areas. Payor will include at least a 10% benefit plan differential(s) within their benefit plan design for utilization of CCN Network hospitals and professional providers (e.g. deductibles, co-insurance, co-payments, and/or stop-loss provisions). Payor may use electronic media or hard copy directories to notify Covered Members of CCN Network Providers.

To assist CCN Network Providers in recognizing Covered Members of CCN, Payor shall agree to identify, or direct its claims administrator to identify, CCN or its Affiliated Entity on identification cards, directories and/or other forms of identification issued to Covered Members. Payor may not otherwise use CCN's names and trademarks without its prior written permission.

Payor agrees that failure to present a healthplan card or other form of identification containing a symbol or service mark which identifies CCN or its Affiliate Entity prior to receipt of Covered Services, may waive the right of the Covered Member or payor to receive healthcare services or benefits at the CCN reimbursement amount.

3.10 <u>Prohibited Practices</u>. Payor agrees that it will apply only the CCN reimbursement amounts for Covered Services provided by a CCN Network Provider and will not (1) use these reimbursement amounts in conjunction or combination with another rate or amount accessed by Payor through a contractual relationship with any other network or entity and (2) use the CCN Network as a "secondary" network to any other network accessed by Payor through contractual relationship with any other network or entity.

Any amounts received by Payor or Payor's clients from such practices shall constitute a breach of this Agreement and addendum and/or addenda, and Payor agrees to repay or cause Payor's clients(s) to repay such discounts received to CCN Network Providers within thirty (30) calendar days from receipt of such amounts. Payor also agrees to hold CCN harmless and indemnify CCN from any claims, actions, damages or liabilities arising from such practices by Payor or Payor's client(s).

3.11 <u>Explanation of Benefits</u>. Payor agrees to issue, or direct its claims administrator to issue, an explanation of benefits (EOB) to the CCN Network Provider for each claim from a CCN Network Provider and to identify the applicable CCN Reimbursement amount on the EOB.

3.12 <u>Eligibility/Compensability</u>. Payor agrees to verify, or direct its claims administrator to verify, Covered Member eligibility under the healthcare services plan during normal working hours if requested by CCN Network Providers. Payor will use best efforts to provide current eligibility to CCN Network Providers. However, final determination of eligibility/compensability shall be made at the time of claim adjudication.

3.13 <u>Provider Reimbursement</u>. Payor agrees to reimburse, or direct its claims administrator to reimburse, the CCN Network Provider according to the reimbursement amounts specified in the contracts between CCN Network Providers and CCN or its Affiliated Entity. Those reimbursement amounts shall constitute payment in full for health care services or benefits provided to Covered Members by the CCN Network Providers and shall be the amounts against which any applicable deductibles, co-payments and/or other plan provisions shall be applied. The reimbursement amounts shall apply to services rendered on or after the effective date of this Agreement and prior to the termination date of this Agreement.

3.14 <u>Time for Payment</u>. Payor shall be responsible for paying participating providers in the CCN Network for Covered Services provided to Covered Members in accordance with the Provider Contracts with such participating providers of the CCN Network within twenty-five (25) calendar days of receipt of a processable claim. If payment is not made within twenty-five (25) calendar days of Payor's receipt of a processable claim, the Payor may not be entitled to apply the CCN Contract Rates.

3.15 <u>Claims Data</u>. Payor will provide claims data for all claims Repriced by Payor including both CCN and non-CCN provider data at no cost to CCN, in a format mutually agreeable and acceptable to both parties by the 15th of the month following the end of each quarter (April, July, October, and January).

3.16 <u>Monthly Reports</u>. Payor will provide CCN with monthly cost savings reports reflecting all CCN Preferred Provider Re-Pricing activity by the 15th of the month for the prior month's business.

3.17 <u>Additional Audit Rights</u>. CCN shall have the additional right to periodically audit, upon reasonable notice,

Client Name: Robert F. Kennedy Medical Plan

the records of Payor or its designee to determine if the rate established for each CCN Facility and/or CCN Network Provider has been Re-priced appropriately and accurately. The volume of claims to be audited will vary based on selection criteria. Payor authorizes CCN and its agents to have access to medical information and other necessary data on hospitalized beneficiaries of Payor and/or Payor's client(s) which may be compiled by Payor's and or Payor's client(s) utilization review organization. Payor likewise agrees to include language in Payor's client(s) agreement, which allows for this access by CCN.

3.18    Correction of Errors. In the event that the CCN Contract Rates and/or terms referenced in Subsection 3.17 above have not been appropriately or accurately applied by Payor or its designee, Payor will make every reasonable effort to immediately correct the errors identified and readjudicate the affected claims.

3.19    Education of Payor's Clients. Payor shall be responsible for educating Payor's client(s) on CCN Network administration and re-pricing practices.

3.20    Notification of Network Implementation. Payor agrees to notify CCN of any CCN Affiliated Health Plan(s) that will implement the CCN Network in the Service Area at least fifteen (15) business days prior to the first day of the month that implementation is desired, so that CCN can announce the new CCN Affiliated Health Plan(s) to the CCN Network Providers.

3.21    Notification of Network Discontinuance. Payor agrees to notify CCN of any CCN Affiliated Health Plan(s) that discontinues its use of the CCN Network in a Service Area prior to the effective date of that termination so that CCN can notify the CCN Network Providers. Payor shall pay the CCN administrative fee(s) for any such CCN Affiliated Health Plan(s) until the termination date or the date Payor notifies CCN of the termination, whichever is later.

3.22    Release of Medical Records. Payor shall obtain from each Covered Member (or the legal representative thereof) a completed and signed authorization and consent for the release of medical records of Covered Member to authorized individuals and entities. All medical records of Covered Members and the removal and transferal thereof, will be treated in accordance with, and governed by, applicable state and federal laws relating to the confidentiality of same. Provided such authorizations and consent includes such further review, nothing in this section shall in any way limit or affect Payor's rights to review, or to have a regulatory body or accreditation agency review, a Preferred Provider's medical records with respect to a Covered Member, subject to applicable federal and state confidentiality laws.

## 4.    Administrative

4.1    CCN Not a Healthcare Provider. The parties acknowledge that CCN is not a health care provider and that all members of the CCN Network are independent contractors and are not employees of CCN or its affiliates. Neither party shall attempt, directly or indirectly, to control, direct or interfere with the practice of medicine by any member of the CCN Network.

4.2    Survival of Audit Rights. The additional rights of CCN to audit Payor's and/or Payor's clients' records (as described in Subsection 3.17) will also survive termination of this Addendum.

4.3    Survival of Re-Pricing Rights. At the termination of this Addendum, Payor shall only Re-price claims for services submitted by CCN Facilities and/or CCN Network Providers which are incurred prior to the termination date and only for a period of ninety (90) calendar days following termination.

4.4    Compensation for CCN Services. Payor shall pay CCN the fees set forth in this Addendum for all CCN Services rendered pursuant to this Addendum.

    4.4.1    No Pre-existing Client Relationship. Administrative fee compensation related to this Addendum relates only to Payor's client(s) for which no pre-existing CCN relationship exists, except as

Exhibit B, page 24

Client Name: Robert F. Kennedy Medical Plan

specifically agreed by CCN.

4.4.2  <u>Payment Cycle</u>.  The CCN fees are due and payable to CCN thirty (30) calendar days following the end of the month for all services provided to Payor or Payor's client(s) for the prior month.

4.5  <u>Product Pricing.</u>  The specific description of the services to be provided by CCN pursuant to the Addenda (i.e., the deliverables) and the prices to be charged for such services are set forth in Attachments 1-3 hereto, which may be amended by mutual written agreement of the parties.

IN WITNESS WHEREOF, the undersigned have executed this Addendum as of the date first written above.

CCN Managed Care, Inc.
A Delaware Corporation

Payor: Robert F. Kennedy Medical Plan

Signed: _____

Name: _____
Blaine Faulkner

Title: _____
Vice President

Date: ___6/20/02___

Signed: _____

Name: ___DOUGLAS L. BLAYLOCK___

Title: ___ADMINISTRATOR___

Date: ___10/30/02___

Client Name:  Robert F. Kennedy Medical Plan

Addendum GS2
Attachment 1
Product Pricing

Hospital/Professional  - PPO Network (PEPM Pricing)
PPO Network includes access to facility and professional providers.
Available in 48 states plus DC (No network available in MT or ND).

**EFFECTIVE DATE**

| | 10/01/02 | 10/01/03 | 10/01/04 | |
|---|---|---|---|---|
| • Hospital/Professional Network | $2.75 | $3.05 | $3.35 pepm | *DKB 10/30/02* |

Directories

| | | | |
|---|---|---|---|
| • Internet directories and provider search engine – Providers-on-the-Web (POW) | | | Included in PPO Network Fee |
| • Paper Directories | | | |
| • (Typeset semi-annually in January and July.)$2.00 | $3.25 | $5.00 per directory | *DKB 10/30/02* |

Standard Re-Pricing
CCN performs standard repricing of hospital and physician claims.
Available in 48 states plus DC (No network available in MT or ND).

PEPM Re-Pricing
| • Hospital Only | $0.20 | $0.25 | $0.25 pepm | *DKB 10/30/02* |
|---|---|---|---|---|

"Employee" means each covered active employee and any other person in his or her own right (such as former employees or others electing COBRA continuation coverage) and not by reason of status as a dependent or spouse that are located in the Service Area and eligible to receive services under the CCN-Affiliated Health Plan.

Minimum Annual Fee: Notwithstanding any other provision, services provided under this Agreement are subject to

an annual minimum payment of twenty five thousand dollars ($25,000) by Payor to CCN ("Minimum Annual Fee").  At the end of each agreement year, CCN will calculate the fees paid by payor during the agreement year. If in any agreement year the Minimum Annual Fee is not met, CCN will notify  Payor and Payor will pay CCN, within 30 days of receipt of the notice from CCN, the greater  of: (1) the difference between the actual fees payor incurred during the agreement year and the amount Payor actually paid during the agreement year; or (2) the difference between $25,000 and the amount Payor actually paid during the agreement year.

Exhibit B, page 26



Addendum GS2
Attachment 2
Service Area(s)

CCN Network Services shall be used as the exclusive preferred provider networks in the following service area(s):

**US Direct Access:**

Yes _____    Effective: _____    No _____

- Includes all Direct Contract Service Areas
- Excludes Affiliate Service Areas
- US Direct includes the following states: AL, AR, AZ, CA, DE, District of Columbia, FL, GA, HI, IA, ID, IL, IN, KS, KY, LA, MD, ME, MI, MN, MS, MO, NC, NE, NJ, NM, NY, OK, OR, PA, SC, SD, TN, TX, UT, VA, VT, WI, WV, and WY

**US Direct Access and Affiliates:**

Yes __X___    Effective: 10/1/02    No _____

- For PEPM fee arrangements, Covered Members should be domiciled in each respective state.
- Includes all Direct Contract Service Areas (see above list)
- Affiliate States includes the following states: AK, CO, CT, MA, NV, NH, OH, RI, and WA

**Excluded States**

Yes _____    Effective: _____    No _____

- List below excluded state (s)

_____    _____
_____    _____
_____    _____

Notes:

States not currently available include MT and ND.

Exhibit B, page 27

Client Name: Robert F. Kennedy Medical Plan

Addendum GS2
Attachment 3
Deliverables

| PRODUCT: NETWORK ACCESS Semi-Leased/Leased Client | | |
|---|---|---|
| Volume: # of Claims (per day/ week/ month/ year) (includes professional and facility) | #_____ | Per: _____ |
| **PRODUCT CONTENTS** | **STANDARD DELIVERABLES** | **NON-STANDARD DELIVERABLES** Subject to additional CCN fees. |

| | | |
|---|---|---|
| *COMPONENTS* | ☑ Network Access  (select one):<br>   ☐ Hospital Only<br>   ☑ Hospital and Professional<br>☑ Payor to Receive  (select one):<br>   ☐ Professional Demographic and CCN Contract Rate data only -  Semi-Leased<br>   ☑ Hospital and Professional Demographic and CCN Contract Rate data – Fully leased<br>☑ Directory data<br>☑ Telephonic Provider Locator Services<br>☑ Providers on the Web (POW)<br>☑ CCN Network and Affiliate Network logo format information | ☐ Wallcards<br>☐ Paper directories<br>   ☑ ~~$3.75~~ per directory *JAB 10/30/02*<br>   $2.00<br>☐ CCN Network and Affiliate Network Logo stickers<br><br>☐ Other: _____ |
| *REPORTS* | **Provided to client only when CCN performs Re-Pricing.  Required of Payor to CCN.** | |
| **Type/Frequency** | ☑ Leased/Semi-leased client submits savings report to CCN by 15th of the month for prior month's business<br>☑ Client submits paid bills/claims data to CCN for fiscal quarter by the 15th of the month following the end of each quarter (April, July, October, January) | ☐ Other: _____ |
| *INVOICES* **Frequency** | ☑ Payor to submit payment to CCN 30 calendar days following the end of the month for all services provided to Payor, or Payor's clients, for the prior month.<br>☐ CCN invoices sent by 15th of the month for prior month's services provided by CCN (applicable for semi-leased clients only). | ☐ Not Available |

Exhibit B, page 28

Client Name: Robert F. Kennedy Medical Plan

| PRODUCT:<br>NETWORK ACCESS<br>Semi-Leased/Leased Clients | | |
|---|---|---|
| PRODUCT CONTENTS | STANDARD DELIVERABLES | NON-STANDARD DELIVERABLES<br>Subject to additional CCN fees. |
| *MAILING* | ☑ US Mail – 1st Class<br>☑ Bulk – Priority 2 day to Payor site<br>☑ Client pays for claims mailed to CCN<br>☑ CCN pays for EOBs /claims mailed to payor via US mail. | ☐ Two-day delivery<br>☐ Overnight delivery<br>☐ Fax<br>☐ Other: _____ |
| *TURN AROUND TIMES* | ☑ Hospital/Facility – 5 Business days upon receipt of a comprehensive, complete, legible, processable claim (See Section 2.2 herein). | ☐ Other: _____ |
| *E-COMMERCE* | ☐ EDI via NEIC ANSI standard for hospital claims for registered NEIC payors.<br><br>☑ EDI via NEIC ANSI standard for professional claims for registered NEIC payors.<br>☑ If payor is not set-up to receive via NEIC, claims are forwarded via standard mail delivery. | ☐ Client Specific Electronic Data Interchange (EDI). Requires a team to evaluate viability.<br>  ☐ Membership Data<br>  ☐ Claims Data<br>  ☐ Both<br><br>☐ Other: _____ |

Notes:

"Semi-Leased Client" - Payor or its designee applies CCN Contract Rates to professional bills and sends facility bills to CCN's Service Center for claims review/network Re-Pricing.
"Leased Client" - Payor or its designee applies CCN Contract Rates to professional and facility bills.

Exhibit B, page 29

**Addendum GS2**
**Attachment 4**
**Illinois Group Health Preferred Provider Organization**

This Addendum to the CCN Payor Base Agreement and any addenda executed therewith are intended to define the additional terms and conditions under which Payor shall contract for and CCN shall provide access to the Illinois Network Services and shall become effective October 1, 2002.

### 1.    Definitions

1.0    All definitions set forth in the CCN Payor Base Agreement and any addenda executed therewith are incorporated herein by reference in this Addendum.

1.1    "Affiliated Entity" is an independent contractor with which CCN contracts for access to preferred provider networks or other health care services.

1.2    "CCN Network" shall mean the network of all Facilities and Professional Providers with which CCN or an Affiliated Entity has entered into a Provider Contract.

1.3    "CCN Network Provider" shall mean a physician or other health care practitioner or health care service provider who has agreed to provide Covered Services to Covered Members through the CCN Network.

1.4    "CCN Services" shall mean those services CCN is obligated to provide pursuant to this Addendum.

### 2.    Covenants of Payor

2.1    Referral to Non-CCN Providers.  Whenever it is medically necessary to refer a Covered Member to a non-CCN provider, Payor will ensure that the Covered Member so referred shall incur no greater out of pocket liability than had the Covered Member received services from a CCN Network Provider.  CCN and Payor agree that a Covered Member who willfully chooses to access a non-CCN Network Provider for health care services available through the CCN Network Provider network will be subject to financial penalties as prescribed by the Payor.

2.2    Covered Member Identification Cards.  Payor shall include both CCN's name and toll-free telephone number on the identification cards, directories, and/or other forms of identification issued by Payor to Covered Members.

### 3.    Administrative

3.1    CCN Not a Healthcare Provider.  The parties acknowledge that CCN is not a healthcare provider and that all members of the CCN Network are independent contractors and are not employees of CCN or its affiliates.  Neither party shall attempt, directly or indirectly, to control, direct or interfere with the practice of medicine by any member of the CCN Network.

3.2    Compensation for CCN Services.  Payor shall pay CCN the fees set forth in this Addendum for all CCN Services rendered pursuant to this Addendum.

3.3    Product Pricing.  The specific description of the services to be provided by CCN pursuant to the Addenda (i.e., the deliverables) and the prices to be charged for such services are set forth in Attachments hereto, which may be amended by mutual written amendment of the parties.

Exhibit B, page 30

Client Name: Robert F. Kennedy Medical Plan

IN WITNESS WHEREOF, the undersigned have executed this Addendum as of the date first written above.

CCN Managed Care, Inc.                          Payor: Robert F. Kennedy Medical Plan
A Delaware Corporation

Signed: _____                Signed: _____

Name: _Blaine Faulkner_____                 Name: _Douglas L. Blaylock_____

Title: _Vice President_____                  Title: _Administrator_____

Date: _6/20/02_____                          Date: _10/30/02_____

Exhibit B, page 31

**Addendum GS2**
**Attachment 5**
**North Carolina Preferred Provider Organizations**

This Addendum to the CCN Payor Base Agreement and any addenda executed therewith are intended to define the additional terms and conditions under which Payor shall contract for and CCN shall provide access to the North Carolina Network Services and shall become effective October 1, 2002.

### 1.    Definitions

1.0    All definitions set forth in the CCN PAYOR BASE AGREEMENT and any addenda executed therewith are incorporated herein by reference in this Addendum.

1.1    "Intermediary" means any entity that employs or contracts with health care providers for the provision of health care services, and that also contracts with a network plan carrier or its intermediary. For purposes of this Addendum, CCN is an Intermediary.

1.2    "Network Plan Carrier" means an insurer, health maintenance organization, or any other entity acting as an insurer, as defined in N.C G.S. § 58-1-5(3), that provides reimbursement or provides or arranges to provide health care services; and uses increased co-payments, deductibles, or other benefit reductions for services rendered by non-network providers to encourage members to use network providers.

### 2.    Covenants of Intermediary

2.1    Network Providers.  Intermediary shall make the CCN Network available to the Network Plan Carrier. The Network Plan Carrier may include or exclude individual providers contracted with the Intermediary from the carrier's individual network plan.

2.2    Records.  The Intermediary shall make available for review by State and Federal agencies, as applicable by law, all provider contracts and subcontracts held by the Intermediary.

2.3    Compliance with Law.  Intermediary shall comply, and shall require each of the network providers to comply, with all statutes, codes, rules, and regulations governing North Carolina Preferred Provider Organizations.

### 3.    Covenants of Network Plan Carrier

3.1    Oversight and Monitoring.  The Network Plan Carrier shall retain legal responsibility to monitor and oversee the offering of services to its members and financial responsibility to its Beneficiaries.

3.2    Compliance with Law.  Network Plan Carrier shall comply with all statutes, codes, rules, and regulations governing North Carolina Preferred Provider Organizations.

### 4.    Administrative

4.1    CCN Not a Healthcare Provider.  The parties acknowledge that CCN is not a healthcare provider and that all members of the CCN Network are independent contractors and are not employees of CCN or its affiliates. Neither party shall attempt, directly or indirectly, to control, direct or interfere with the practice of medicine by any member of the CCN Network.

**Client Name: Robert F. Kennedy Medical Plan**

4.2     <u>Changes in State Law</u>. In the event of changes in the statutes or agency regulations governing the North Carolina Preferred Provider Organization, either by the state or federal agency, which changes have a material impact upon the reasonable expectations of any party upon entering into this Addendum, then the parties agree to negotiate in good faith amendments to the Addendum which are necessary due to the change in law. If after 60 days of negotiation, the parties are unable to finalize an amendment, then any party may terminate this agreement upon 60 days written notice

4.3     <u>Compensation for CCN Services</u>. Payor shall pay CCN the fees set forth in this Addendum for all CCN Services rendered pursuant to this Addendum.

IN WITNESS WHEREOF, the undersigned have executed this Addendum as of the date first written above.

CCN Managed Care, Inc.                     Payor: Robert F. Kennedy Medical Plan
A Delaware Corporation

Signed: _____      Signed: _____

Name: _____       Name: _DOUGLAS L. BLAYLOCK_
       Blaine Faulkner

Title: _____         Title: _ADMINISTRATOR_
       Vice President

Date: _6/20/02_                     Date: _10/30/2002_

Exhibit B, page 33

**Group Health**
**Addendum GS4**
**Case Management**

This Addendum to the CCN Payor Base Agreement and any addenda executed therewith are intended to define the additional terms and conditions under which Payor shall contract for and CCN shall provide access to the Case Management services and shall become effective October 1, 2002.

## 1.    Definitions

1.0    All definitions set forth in the CCN PAYOR BASE AGREEMENT and any addenda executed therewith are incorporated herein by reference in this Addendum.

1.1    "Affiliated Entity" is an independent contractor with which CCN contracts for access to preferred provider networks or other health care services.

1.2    "Attending Physician" means the physician who is primarily responsible for care and treatment of a Covered Member.

1.3    "Case Management" is a systematic and personal approach to reviewing and coordinating the care of Covered Members who (a) have diagnoses specified by CCN and/or the Payor and (b) are likely to utilize extensive health care resources and/or require long term, complex care. Case Management shall include, but not be limited to, the review of Treatment Plans and development and recommendation of alternative Treatment Plans.

1.4    "CCN Affiliated Health Plan" is the plan, program or policy offered, sponsored, administered or insured by Payor to provide coverage for health care services or benefits to a Covered Member. This includes a plan, program or policy designed to provide coverage for health care services provided through a group health, workers' compensation, international travelers, managed auto, disability management, or other managed health care arrangement.

1.5    "CCN Network" shall mean the network of all Facilities and Professional Providers with which CCN or an Affiliated Entity has entered into a Provider Contract.

1.6    "CCN Services" shall mean those services CCN is obligated to provide pursuant to this Addendum.

1.7    "Covered Services" shall mean those health care services for injuries, illnesses or conditions, if any, which CCN Providers shall be obligated to provide for Covered Members pursuant to this Addendum.

1.8    "Discharge Planning" shall mean the review of the medical, rehabilitative and personal care requirements of a Covered Member who is an inpatient in a Facility in order to plan and coordinate the transfer of such Covered Member to the appropriate level of care consistent with such requirements upon discharge, and shall include recommendations regarding discharge date, alternative levels of care, and any relevant information that could facilitate earlier discharge of the Covered Member.

1.9    "Facility" means any hospital, extended care facility, or any other inpatient or outpatient facility involved in the provision of care and treatment to the Covered Member.

1.10    "Medically Necessary" means services, supplies and/or treatment which are determined to be:

    a.    Appropriate and necessary for the symptoms, diagnosis or treatment of the medical condition;

Exhibit B, page 34

b.    Provided for the diagnosis or direct care and treatment of the medical condition;

c.    Within standards of good medical practice within the organized medical community,

d.    Not primarily for the convenience of the Covered Member, the Covered Member's physician or another provider; and

e.    The most appropriate supply or level of service which can be safely provided. For Facility stays, this means that care as an inpatient is necessary due to the kind of services the Covered Member is receiving or the severity of the Covered Member's condition, and that safe and adequate care cannot be received as an outpatient or in a less intensive medical setting.

1.11    "<u>Treatment Plan</u>" shall mean a plan for treatment, including length of disability, of a Covered Member, including, without limitation, hospitalization, surgery, physical therapy, physical rehabilitation and/or chiropractic services proposed by an Attending Physician or other treating provider for a Covered Member.

## 2.    Covenants of CCN

2.1    <u>CCN Services</u>. CCN shall provide comprehensive Case Management services, on behalf of Payor, under the terms and conditions described in this Addendum.

2.2    <u>Case Management Procedures, Guidelines, Screening Criteria and Norms</u>. CCN shall establish and maintain Case Management procedures; guidelines, screening criteria and norms governing the Case Management services provided pursuant this Addendum.

2.3    <u>Screening</u>. CCN shall screen Covered Members referred to CCN by Payor or identified by CCN staff in order to determine appropriate candidates for Case Management.

2.4    <u>Alternative Treatment Plans and Discharge Planning</u>. After obtaining verbal and/or written consent from the Covered Member, CCN shall review the Covered Member's Treatment Plan and develop and recommend alternative treatment plans and perform Discharge Planning as appropriate. Such alternative treatment plans may include facilitating early hospital discharge, avoiding unnecessary hospitalization, arranging for alternative providers, reducing unnecessary service levels, arranging for lower level non-acute care, and negotiating discounts with providers. The consent of the Covered Member to Case Management does not obligate Payor to agree to provide services or supplies not covered by Payor's CCN Affiliated Health Plan. When an alternative treatment plan includes arranging for services or supplies not normally covered under the CCN Affiliated Health Plan, CCN shall obtain Covered Member's written authorization for release of medical information, and written consent of Payor and physician to such treatment plan. CCN and Payor shall establish mutually acceptable procedures to document agreements regarding alternative treatment plans.

2.5    <u>CCN Liaison</u>. CCN shall designate one or more individuals to serve as liaison with the Payor and claims administrator for the implementation and maintenance of the Case Management services.

## 3.    Covenants of Payor

3.1    <u>Benefit Information</u>. Payor shall designate, or direct its claims administrator to designate, one or more individuals to be available to CCN for benefit information/clarification.

3.2    <u>Benefit Approval</u>. Payor shall designate, or direct its claims administrator to designate, one individual to receive written recommendations from CCN regarding Case Management, supplies and services covered under the CCN Affiliated Health Plan and for approval of benefits not covered under the CCN Affiliated Health Plan, if applicable.

3.3    Access to Information.  For purposes of Case Management, Payor hereby grants CCN and its agents access to medical information and such other data as is reasonably required for the review of health care services provided or proposed for Covered Members.

3.4    Final Determinations.  Payor shall consider reports and recommendations made by CCN regarding whether Treatment Plans proposed for Covered Members are Medically Necessary in determining payment of claims.  Payor shall at all times retain full responsibility for determining eligibility in any Case and for payment or non-payment of claims.

3.5    No Retrospective Denial of Previously Approved Services.  Payor hereby agrees that no member of the CCN Network that seeks and obtains prior approval pursuant to the Case Management services provided pursuant to this Addendum for Covered Services provided to a Covered Member shall be denied payment for such services based upon a Retrospective Review finding such services to be not Medically Necessary.

3.6    Case Management Determinations.  Payor further acknowledges that the Case Management services provided by CCN pursuant to this Addendum, including without limitation Case Management determinations, are advisory only, and are designed to assist Payor or Payor's claims administrator in the determination of whether to pay for medical services and supplies.  Payor and Payor's claims administrator have the option to accept or reject any Case Management determinations made by CCN. The payment, non-payment or modified payment of policy or plan benefits is the sole responsibility of Payor or Payor's claims administrator.

3.7    Physicians Control/Direction of Medical Care.  Payor hereby acknowledges that CCN and its agents have no authority to control or direct the health care services proposed or provided for Covered Members.  Such authority shall lie only with the Covered Member and the Attending Physician in any situation, and such individuals may accept, reject or modify any advisory determinations made by CCN or its agents, except insofar as a judge of a court of competent jurisdiction may require them to follow the determinations of Payor, Payor's agents, review panel or other third party.

3.8    Applicability of ERISA.  Payor covenants that the CCN Affiliated Health Plan is governed by the provisions of the Employee Retirement Income Security Act.

## 4.    Termination

4.1    Effect of Termination.  For the purposes of Case Management, on the date of termination, CCN Services will be discontinued as of that date unless Payor and CCN agree, in writing, to other arrangements.

## 5.    Administrative

5.1    CCN Not a Healthcare Provider.  The parties acknowledge that CCN is not a healthcare provider and that all members of the CCN Network are independent contractors and are not employees of CCN or its affiliates.  Neither party shall attempt, directly or indirectly, to control, direct or interfere with the practice of medicine by any member of the CCN Network.

5.2    Compensation for CCN Services.  Payor shall pay CCN the fees set forth in this Addendum for all CCN Services rendered pursuant to this Addendum.

Client Name: Robert F. Kennedy Medical Plan

5.3     Product Pricing. The specific description of the services to be provided by CCN pursuant to the Addenda (i.e., the deliverables) and the prices to be charged for such services are set forth in Attachments hereto, which may be amended by mutual written amendment of the parties.

IN WITNESS WHEREOF, the undersigned have executed this Addendum as of the date first written above.

CCN Managed Care, Inc.                            Payor: Robert F. Kennedy Medical Plan
A Delaware Corporation

Signed: _____              Signed: _____

Name: __Blaine Faulkner__                        Name: __Douglas L. Blaylock__

Title: __Vice President__                        Title: __Administrator__

Date: __6/20/02__                                Date: __10/30/02__

Exhibit B, page 37

Client Name: Robert F. Kennedy Medical Plan

**Addendum GS4**
**Attachment 1**
**Product Pricing**

<u>Case Management</u>

♦   Management of the care of catastrophically ill and injured patients; development of treatment plans for patients; negotiation of discounts for non-network provider services

      Telephonic (to be billed in 1/10th of an hour increments)                         $110 per hour

Client Name: Robert F. Kennedy Medical Plan

**Addendum GS4**
**Attachment 2**
**Deliverables**

| PRODUCT:<br>CASE MANAGEMENT | PROJECTED ANNUALIZED REVENUE: | $_____ |
|---|---|---|

Volume: # of Cases (per day/ week/ month/ year)    #_____ Per:_____

| PRODUCT CONTENTS | STANDARD DELIVERABLES | NON-STANDARD DELIVERABLES<br>Subject to additional CCN fees. |
|---|---|---|

*COMPONENTS*

☑ Clinical Review of catastrophic cases identified by CCN and/or the payor via pre-established criteria          ❑ Other: _____

☑ Review by licensed RN's          ❑ Other: _____

☑ Negotiate discounts for non-contracted services

☑ Channeling to CCN Network Providers

☑ Telephonic Case Management

❑ On-site Case Management

*REPORTS*
**Type/Frequency**

❑ Monthly          ❑ Other: _____

☑ Annual

*INVOICES*
**Type/Frequency**

☑ Monthly          ❑ As Incurred

❑ Quarterly

❑ Other: _____

*MAILING*

☑ U.S. Mail          ❑ Two Day delivery

❑ Overnight delivery

❑ Fax #: _____

❑ Other: _____

*TURN AROUND TIMES*

☑ 24 hours (for nurse to make initial contact with Covered Member)          ❑ Other:_____

☑ Initial Report within 15 business days.

*E-COMMERCE*

❑ Auto Fax Reviews          ❑ Electronic Data Interchange (EDI) Bridge. Requires a team to evaluate viability.
Fax # _____

❑ E-mail address: _____

❑ Fax #: _____

❑ Other: _____

Exhibit B, page 39

AMENDMENT TO THE AGREEMENT

BETWEEN CCN MANAGED CARE, INC. (CCN) AND

ROBERT F. KENNEDY MEDICAL PLAN


THIS AMENDMENT to the Payor Agreement dated January 1, 1987 is made and entered into by and between CCN Managed Care, Inc. (CCN) and Robert F. Kennedy Medical Plan.

This Amendment is effective as of October 1, 2002.

The parties above agree to the following modifications to the Agreement:

1.  It is the intent of the parties that, upon execution of the attached CCN Payor Base Agreement and Addendum/Addenda, all other previously executed contractual documents between the parties are hereby replaced in their entirety.


Except as so amended, all other terms and conditions of the Agreement shall remain in full force and effect. In case of a conflict between the terms of the Agreement and the terms of this Amendment, the terms of this Amendment will control.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment by their duly authorized officers.


CCN Managed Care, Inc.
A Delaware Corporation

Signed: _____

Name: __Blaine Faulkner__

Title: __Vice President__

Date: __6/20/02__


Payor: Robert F. Kennedy Medical Plan

Signed: _____

Name: __DOUGLAS L. BLAYLOCK__

Title: __ADMINISTRATOR__

Date: __10/30/02__


Exhibit B, page 40