# EXHIBIT A

to Declaration of Richard Vera in Support of Defendant's Opposition to Motion to Remand

Case No. 08 CV 0747 WQH CAB



# THE ROBERT F. KENNEDY

# FARM WORKERS MEDICAL PLAN

UNITED FARM WORKERS OF AMERICA,

AFL-CIO

JANUARY 2003

EXHIBIT A p.4

# ROBERT F. KENNEDY FARM WORKERS MEDICAL PLAN

P.O. Box 47 - La Paz
Keene, California 93531
(888) RFK-JDLC (735-5352)
or
(800) 321-6607

## BOARD OF TRUSTEES

**UNION TRUSTEES**
Arturo S. Rodriguez
Tanis Ybarra
Efren Barajas

**MANAGEMENT TRUSTEES**
Shah Kazemi
Rudd Johnson

## FUND ADMINISTRATOR
Douglas L. Blaylock

## LEGAL COUNSEL
Marcos Camacho
Geffner & Bush

## CONSULTANT
Rael & Letson

Published January, 2003

i

EXHIBIT A p 5

# INFORMATION REQUIRED BY THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED

1. **Name of Plan**
   This Plan is known as the Robert F. Kennedy Farm Workers Medical Plan.

2. **Plan Administrator and Sponsor**
   The Board of Trustees is the Plan Administrator. This means that the Board of Trustees is responsible for seeing that information regarding the Plan is reported to government agencies and disclosed to Plan participants and beneficiaries in accordance with the requirements of the Employee Retirement Income Security Act of 1974 (ERISA), as amended.

   The Administrative Office will provide you, upon written request, information as to whether a particular employer is a sponsor of the Plan and the address of the employer or union.

3. **Name and Address of the Board of Trustees**
   The Board of Trustees consists of an equal number of employer and union representatives, selected by the employers and the union, in accordance with the Trust Agreement which relates to this Plan.

   If you wish to contact the Board of Trustees, you may use the address and phone number below:

   Robert F. Kennedy Farm Workers Medical Plan
   P.O. Box 47, La Paz
   Keene, California 93531
   (888) 735-5352
   or
   (800) 321-6607

   The Board of Trustees has designated the Fund Administrator to manage the Plan Administrative Office and to perform routine administrative duties under its direction. All matters relating to the administration of the Plan should be referred to:

   Douglas L. Blaylock, Administrator
   Robert F. Kennedy Farm Workers Medical Plan
   P.O. Box 47, La Paz
   Keene, California 93531
   (888) 735-5352
   or
   (800) 321-6607

EXHIBIT A p6

4. **Names, Titles and Addresses of Any Trustee or Trustees**
   As of January 1, 2003, the Trustees of this Plan are:

   | UNION TRUSTEES | EMPLOYER TRUSTEES |
   |---|---|
   | Arturo S. Rodriguez<br>United Farm Workers of America, AFL-CIO<br>P.O. Box 62, La Paz<br>Keene, California 93531 | Shah Kazemi<br>Monterey Mushrooms, Inc.<br>260 Westgate Drive<br>Watsonville, California 95076 |
   | Tanis Ybarra<br>United Farm Workers of America, AFL-CIO<br>P.O. Box 62, LaPaz<br>Keene, California 93531 | Rudd Johnson<br>Bear Creek Corporation<br>2500 S. Pacific Highway<br>Medford, Oregon 97501 |
   | Efren Barajas<br>United Farm Workers of America, AFL-CIO<br>519 Main Street<br>Watsonville, California 95076 | |

5. **IRS Identification Numbers**
   The Employer Identification Number (EIN) assigned to the Plan by the Internal Revenue Service is 94-6186170. The number assigned to the Plan by the Board of Trustees, for purposes of reporting to the Department of Labor, is Plan No. 501.

6. **Agent for Service of Legal Process**
   The name and address of the agent designated for the service of legal process is the Fund Administrator at the above address. Legal process may also be served on any Plan Trustee.

7. **Collective Bargaining Agreement**
   Contributions to this Plan are made on behalf of each employee in accordance with Collective Bargaining Agreements between various Employers and the United Farm Workers of America, AFL-CIO, or other organizations as approved by the Board of Trustees.

   The Plan Administrative Office will provide you, upon written request, a copy of the relevant Collective Bargaining Agreements. The Collective Bargaining Agreements are also available for examination at the office of the Plan Administrator or at the Union Field Offices.

8. **Source of Contributions**
   The benefits described in this section are provided primarily through employer and employee contributions to the Plan (in amounts determined by the Board of Trustees) on a fixed rate per hour worked basis. Contributions for certain employees are made on a per person per month basis.

   The Administrative Office will provide you, upon written request, information as to whether a particular employer is contributing to the Plan, and/or a complete list of the participating employers contributing to the Plan.

9. **Type of Plan**
   This Plan is maintained for the purpose of providing Hospital, Medical, Dental, Prescription Drug, Vision, Dental and Life benefits in the event of sickness, accident, or death.

10. **Type of Administration**
    The Plan is legally classified as a Jointly Managed Multiemployer Collectively Bargained Health and Welfare Plan. The Plan is a Self-Insured and Self-Administered Plan (except to the extent other benefits under the Plan are provided by other groups pursuant to contracts with the Plan). This means that the Board of Trustees administers your Plan, and not an insurance company or some other outside party. For this reason, the Trustees have the responsibility to make sure that the Plan benefits do not cost more than the Employers and Employees have agreed to contribute under the Collective Bargaining Agreement.

11. **Identity of Benefit Providers**
    The Vision care benefit is provided through Vision Service Plan (VSP). The dental care benefit is provided through Pacific Dental Benefits or Dedicated Dental Systems, Inc. Prescription drug benefits are provided through an agreement with Express Scripts. Benefits are provided directly from the Plan itself for Death, Life, Hospital and Medical benefits. All types of benefits provided through the Plan are set forth in the Summary of Plan Benefits.

12. **Fiscal Plan Year**
    The fiscal records of the Plan are kept separately for each Fiscal Plan Year. The Fiscal Plan Year begins on each January 1 and ends on each December 31.

13. **The Plan's Requirements with Respect to Eligibility for Participation and Benefits**
    The eligibility requirements are specified on pages 6 to 8 of this booklet.

14. **Circumstances Resulting in Disqualification, Ineligibility or Denial or Loss of Benefits**
    Loss of eligibility is described on page 7 of this booklet.

15. **Procedures to Follow for Filing a Claim**
    The procedures to be followed in filing a claim for benefits are described on pages 19 to 22 of this booklet.

16. **Addresses of Providers**
    Addresses for the providers servicing the Plan are as follows:

    **Community Care Network (CCN)**
    10260 Meanley Drive
    San Diego, California 92131

    **Express Scripts**
    P. O. Box 66564
    St. Louis, Missouri 63166

    **Vision Service Plan (VSP)**
    3333 Quality Drive
    Rancho Cordova, California 95670

    **Pacific Dental Benefits**
    1390 Willow Pass Road, Suite 800
    Concord, California 94520

    **Dedicated Dental Systems**
    3990 Ming Avenue
    Bakersfield, California 93309


EXHIBIT A p8

# ELIGIBILITY RULES

### ENROLLMENT FORMS/PLAN IDENTIFICATION CARDS

To obtain benefits described in this booklet, you must enroll or register at the Plan Administrative Office and obtain a Plan Identification Card. Your Identification Card will list you and your eligible dependents. Benefits provided in this booklet may be denied without the required proof of identification.

To receive your Plan Identification Card, you must complete an enrollment form, and mail it to the Plan Administrative Office immediately. You can obtain an enrollment form at the Plan Administrative Office or your nearest Union Field Office. They can also help you complete this form.

When submitting the completed enrollment form you must also submit copies of your marriage certificate for your dependent spouse and copies of birth certificates or adoption decree/certificate for your dependent children.

Your claims will not be processed for payment until all of the required documentation is received by the Plan Administrative Office.

**Special Enrollment Rights (for active employees only)**
If you are declining enrollment for yourself or your dependents (including your spouse) because of other health insurance coverage, you may in the future be able to enroll yourself or your dependents in this plan, provided that you request enrollment within 30 days after your other coverage ends. In addition, if you have a new dependent as a result of marriage, birth, adoption or placement for adoption, you may be able to enroll yourself and your dependents, provided that you request enrollment within 30 days after the marriage, birth, adoption or placement for adoption.

### MAINTAINING ELIGIBILITY
To qualify for benefits, you must work the required minimum number of hours for an employer who contributes on your behalf to the Robert F. Kennedy Farm Workers Medical Plan.

**Initial and Continuing Eligibility**
To be eligible for benefits under this Plan, you must work 80 hours in a calendar month (or within your employers payroll cutoff month), followed by a one-month waiting period, followed by one month of benefit eligibility.

*Example:* You work 80 or more hours for a participating employer in January 2003. The Employer reports the hours worked and makes the required contribution to the trust fund during February 2003. You are then eligible for one month of benefits in March 2003.

NOTE: Eligibility for salaried employees of the Farm Worker Movement entities differs from the aforementioned rules, in that if their first day of work is after the 15th or their last day of work is prior to the 16th, that month will not count towards eligibility for benefits.

**Coverage During Family and Medical Leave**
A federal law known as the Family and Medical Leave Act (FMLA) requires that certain employers provide to eligible employees up to twelve (12) weeks of unpaid leave for any of the following reasons:

1. for the birth, adoption, or foster care placement of a child;

2. for a serious health condition that prevents the employee from working; or

3. to care for an immediate family member (spouse, child or parent) with a serious health condition.

Under the provisions of this Act you will be entitled to maintain your medical coverage under the Robert F. Kennedy Farm Workers Medical Plan as long as your employer continues to make contributions to the Plan as required. For more information about the Family and Medical Leave Act, contact your employer.

EXHIBIT A p9

**Coverage During Military Absences**
An eligible employee who enters the Armed Forces shall be provided continuation and reinstatement rights in accordance with the Uniformed Services Employment and Reemployment Rights Act of 1994 (see page 12).

**Termination of Coverage**
Your eligibility will terminate on the earliest of the following dates;

1. the date the Plan terminates;

2. the last day of the calendar month for which you no longer meet the eligibility requirements under the Plan;

3. the date of entrance into full-time active duty with the Armed Forces of the United States, except when prohibited by law.

**ELIGIBLE DEPENDENTS**
Participants are required to submit an Enrollment Card supported by Marriage Certificates, Birth Certificates and other legal means of proof for all claimed dependents. Benefits will not be provided such dependents without the required documentation.

Your lawful spouse is considered an eligible dependent provided the spouse is not legally separated from you and provided that the spouse is either living with you or supported by you.

Unmarried dependent children under 19 years of age are considered eligible dependents. Such dependent children also include unmarried step-children, legally adopted children and children placed in the home in anticipation of adoption provided they are dependent upon you for your support. Proof of your support of each child may be required.

Dependent children who are full-time students will continue to be eligible under the Plan up to but not including their 23rd birthday. In order to secure coverage, a school-certified form must be provided to the Plan Administrative Office as proof of full-time student status. Under this Plan, full-time student status means that your dependent child is enrolled in at least four classes and/or is earning at least 12 semester credits at an accredited educational institution. Proof of your support of each child may be required.

An unmarried child 19 years of age or older may continue to be eligible as a dependent if he/she is incapable of self-support because of physical or mental incapacity (meaning that he/she must rely on the parents for support) that commenced prior to reaching the age of 19. Proof must be furnished to the Plan Administrative Office before such child's 19th birthday or as soon as possible thereafter.

*A Dependent can only be eligible in a month in which the Employee is eligible.*

Once a dependent child, regardless of age, becomes a full-time employee, they are no longer considered an eligible dependent.

**Termination of Coverage**
A Dependent's eligibility will terminate on the earliest of the following dates:

1. the date coverage for Dependents is terminated by the Board of Trustees;

2. the date the Employee's coverage ends;

3. the date of entrance into full-time active duty in the Armed Forces of the United States, unless prohibited by law;

4. the date he/she no longer meets the definition of an eligible Dependent.

An Employee and/or eligible Dependent who loses eligibility may be eligible for continued coverage under the provisions of COBRA (refer to the COBRA section on pages 9-11 for details).

**Qualified Medical Child Support Orders (QMCSO)**
The Robert F. Kennedy Farm Workers Medical Plan is required to provide benefits in accordance with the applicable requirements of a qualified medical child support order. A qualified medical child support order is a judgment or decree by a court of competent jurisdiction that requires a group health plan to provide coverage to the children of a Plan participant pursuant to the state domestic relations law. Any medical child support order shall be delivered to the Administrator of the Robert F. Kennedy Farm Workers Medical Plan. When the medical child support order is received, the Plan will determine whether or not the order meets the criteria to be considered a qualified medical child support order and will notify the participant and alternate recipient(s) of such determination. An alternate recipient is any child of a participant who is required to be covered under a group health plan with respect to such participant.


EXHIBIT P 11

# EXHIBIT B

to Declaration of Richard Vera in Support of Defendant's Opposition to Motion to Remand

Case No. 08 CV 0747 WQH CAB



Client Name: <u>Robert F. Kennedy Medical Plan</u>

## CCN PAYOR BASE AGREEMENT

This CCN Payor Base Agreement is made and entered into effective <u>October 1, 2002</u>, by and between CCN Managed Care, Inc., a Delaware corporation ("CCN") and <u>Robert F. Kennedy Medical Plan</u>.

### DEFINITIONS

A.      "CCN" is a managed healthcare organization that provides group health, workers' compensation, international travelers', managed auto, disability management and other managed health care services and programs ("CCN Services") to self-insured employers, third party administrators, insurance companies and other companies which administer, process, provide or secure access to covered health care services or benefits to Covered Members.

B.      "Payor" is a self-insured employer, third party administrator, insurance company, health services plan, trust, nonprofit facility service plan, any governmental unit and/or any other entity, which has an obligation to administer, process, provide or secure access to covered health care services or benefits to Covered Members.

C.      "Covered Member" is any beneficiary, claimant, or injured worker that Payor identifies as being eligible for coverage under this CCN Payor Base Agreement or any addendum and/or addenda hereto.

### AGREEMENT

Payor desires to have CCN provide CCN Services to Payor and Payor's Covered Members. Now therefore, in consideration of the mutual covenants, terms and conditions herein contained and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1.      <u>Base Agreement, Services to be Provided and Additional Terms and Conditions</u>

   Certain additional terms and conditions under which Payor is contracting with CCN are contained in a separate addendum and/or addenda reduced to writing and signed by each of the parties (together with the CCN Payor Base Agreement, this "Agreement"). The terms and conditions set forth in the separate addendum and/or addenda are incorporated herein by this reference. Throughout the term of this Agreement, CCN shall provide those CCN Services set forth herein. No amendment, modification, or supplement to the CCN Payor Base Agreement, the addendum and/or addenda shall be binding on any of the parties unless it is reduced to writing and signed by each of the parties. In the event that a conflict arises between the CCN Payor Base Agreement and any addendum regarding any services to be provided by CCN, the terms and conditions of the addendum shall control, except for Section 2 of the CCN Payor Base Agreement.

2.      <u>Minimum Annual Fee</u>

   Notwithstanding any other provision, services provided under this Agreement are subject to an annual minimum payment of twenty five thousand dollars ($25,000) by Payor to CCN ("Minimum Annual Fee"). At the end of each agreement year, CCN will calculate the fees paid by Payor during the agreement year. If in any agreement year the Minimum Annual Fee is not met, CCN will notify Payor and Payor will pay CCN, within 30 days of receipt of the notice from CCN, the greater of: (1) the difference between the actual fees Payor incurred during the agreement year and the amount Payor actually paid during the agreement year; or (2) the difference between $25,000 and the amount Payor actually paid during the agreement year.

3. Compensation

3.1 CCN shall bill Payor for the CCN Services set forth in the addendum and/or addenda. Payor shall remit the fee for CCN Services to CCN (along with a statement verifying the current number of Covered Members) no later than thirty (30) calendar days after the date on the CCN invoice. In the event Payor does not remit to CCN within the thirty (30) calendar day period, interest shall accrue on the outstanding balance from the due date at the rate of eighteen percent (18%) per annum or the maximum allowed by law.

3.2 Annual Fee Increase. On or after the annual anniversary date of the Agreement, CCN may increase the fees for services within sixty (60) calendar days of the written notice to Payor of these increases. Unless affirmatively rejected in writing by Payor on or before the sixtieth (60th) calendar day following notice provided by CCN, the increases are deemed accepted by Payor.

3.3 CPI Increase. In addition to the fee increase set forth above in Section 3.2, CCN will annually adjust all fees that are charged on an hourly, per capita, per case, per bill, per claim or per unit basis, by giving 60 days notice to Payor prior to the anniversary date of each year of this Agreement. Such fees for the next year of the Agreement will be increased by an amount equal to the percentage difference between the annual average of the CPI available for the most recently published year, and the annual average of the CPI available for the year prior to the most recently published year. For purposes of this Agreement, the term "CPI" means the Consumer Price Index - All Urban Consumers, Medical Care Services, Base Period: 1982-1984=100, Not Seasonally Adjusted. If the methodology for calculating the CPI is substantially revised, CCN will make an adjustment to such fees to produce results equivalent, as nearly as reasonably possible, to those which would have been obtained if the methodology for calculating CPI had not been so revised.

3.4 Audit. Subject to the confidentiality provisions set forth in Article 5, Payor agrees that at its office, during normal business hours, and upon not less than 30 days advance notice, CCN will have the right to examine records which Payor has kept which relate directly to services received pursuant to this Agreement. Subject to Article 5, CCN agrees that at its office, during normal business hours, and subject to CCN's standard audit procedures, Payor will have the right to examine records which CCN has kept which relate directly to services provided pursuant to this Agreement. The auditing party will provide a summary of the final results of such audit or examination to the other party. For services provided by CCN, such right of examination will continue for a period of not less than two years after the date of discharge, end of the treatment, or the end of CCN's services in relation to the specific episode of care. The auditing party agrees to pay the other party for its costs incurred in supporting such audits at the audited party's then-current audit fees. CCN may require Payor's representatives to execute a confidentiality agreement prior to commencing any such audit. No party is entitled to conduct an audit more frequently than twice per calendar year, except as reasonably necessary to follow-up on previous findings.

4. Term and Termination

4.1 Term. The term of this Agreement including the addendum and/or addenda shall be for ~~three (3) years~~ *one (1) year* _DLB_, commencing on the date first set forth above. This Agreement shall be automatically extended for successive renewal periods of ~~three (3) years~~ *one (1) year* _DLB_ each, unless otherwise terminated herein.

4.2 Termination By Payor. This Agreement may be terminated by written notice thereof given by Payor to CCN if any one of the following occurs:

4.2.1 Failure of CCN to meet any material covenant, agreement, or obligation provided for in this Agreement if it has not commenced to cure any such default within 20 days and has not cured such default within 90 days after written notice thereof to CCN by Payor.

4.2.2 CCN becomes insolvent or is adjudicated as a bankrupt entity, or its business comes into possession or control of any trustee in bankruptcy, or a receiver is appointed for it, or it makes a general assignment for the benefit of creditors. If any of these events occurs: (a) no interest in this Agreement may be deemed

an asset of creditors; (b) no interest in this Agreement may be deemed an asset or liability of CCN; and (c) no interest in this Agreement may pass by the operation of law without the consent of Payor.

4.2.3   Payor gives not less than six months written notice to CCN prior to the end of the Term. Such termination will be effective at the expiration of the then-current Term.

4.3   Termination By CCN. This Agreement may be terminated, in part or in whole, by written notice thereof given by CCN to Payor if any one of the following occurs:

4.3.1   Failure of Payor to meet any material covenant, agreement, or obligation provided for in this Agreement if it has not commenced to cure any such default within 20 days and has not cured such default within 90 days after written notice thereof to Payor by CCN.

4.3.2   Failure of Payor to make payment under this Agreement when due, and if payment is not made within 20 days following written notice of non-payment sent by CCN to Payor.

4.3.3   Payor becomes insolvent, or is adjudicated as a bankrupt entity, or its business comes into possession or control, even temporarily, of any trustee in bankruptcy, or a receiver is appointed for it, or it makes a general assignment for the benefit of creditors. If any of these events occurs: (a) no interest in this Agreement may be deemed an asset of creditors; (b) no interest in this Agreement may be deemed an asset or liability of Payor; and (c) no interest in this Agreement may pass by operation of law without the consent of CCN.

4.3.4   CCN gives not less than six months written notice to Payor prior to the end of the Term. Such termination will be effective at the expiration of the then-current Term.

4.4   Post-Termination Rights and Responsibilities. Termination of this Agreement shall not terminate rights and obligations of the parties, which by their nature extend beyond the term. Upon termination, Payor shall promptly notify or shall direct its claims administrator to promptly notify Covered Members of such termination.

5.   Relationship of the Parties

5.1   Independent Contractor Relationship. The relationship between CCN and Payor is one of independent contractors. Nothing herein is intended to create nor shall be deemed or construed to create any relationship between the parties other than that of independent contractors. Neither of the parties, nor any of their respective officers, directors, employees, agents or representatives shall act as nor be construed to be the partner, agent, employee, or representative of the other.

5.2   Payment of Claims. Payor shall retain full responsibility for all medical benefits, temporary and permanent disability benefits, death benefits, medical-legal expenses, vocational rehabilitation, and any other expenses or services which are required to be paid or provided under applicable state and federal laws. CCN is not a claims administrator, and is engaged hereunder solely for the purpose of making recommendations with respect to provision and payment of medical benefits. Payor retains full responsibility for all final determinations regarding the obligation of Payor or any other person to pay for or otherwise provide benefits to Covered Members, including without limitation claims by or against employers, Covered Members, members of the CCN network, facilities, providers or other health care service providers.

6.   Protection of Confidential Information

6.1   License to Use CCN Materials. CCN may from time to time provide to Payor certain materials, brochures, reporting forms, and other related material, whether in a printed or electronic format, in connection with CCN's provision of the CCN Services. CCN grants to Payor a non-exclusive license to use these materials during the term of this Agreement including the addendum and/or addenda.

3.3   Access to Information. For purposes of Case Management, Payor hereby grants CCN and its agents access to medical information and such other data as is reasonably required for the review of health care services provided or proposed for Covered Members.

3.4   Final Determinations. Payor shall consider reports and recommendations made by CCN regarding whether Treatment Plans proposed for Covered Members are Medically Necessary in determining payment of claims. Payor shall at all times retain full responsibility for determining eligibility in any Case and for payment or non-payment of claims.

3.5   No Retrospective Denial of Previously Approved Services. Payor hereby agrees that no member of the CCN Network that seeks and obtains prior approval pursuant to the Case Management services provided pursuant to this Addendum for Covered Services provided to a Covered Member shall be denied payment for such services based upon a Retrospective Review finding such services to be not Medically Necessary.

3.6   Case Management Determinations. Payor further acknowledges that the Case Management services provided by CCN pursuant to this Addendum, including without limitation Case Management determinations, are advisory only, and are designed to assist Payor or Payor's claims administrator in the determination of whether to pay for medical services and supplies. Payor and Payor's claims administrator have the option to accept or reject any Case Management determinations made by CCN. The payment, non-payment or modified payment of policy or plan benefits is the sole responsibility of Payor or Payor's claims administrator.

3.7   Physicians Control/Direction of Medical Care. Payor hereby acknowledges that CCN and its agents have no authority to control or direct the health care services proposed or provided for Covered Members. Such authority shall lie only with the Covered Member and the Attending Physician in any situation, and such individuals may accept, reject or modify any advisory determinations made by CCN or its agents, except insofar as a judge of a court of competent jurisdiction may require them to follow the determinations of Payor, Payor's agents, review panel or other third party.

3.8   Applicability of ERISA. Payor covenants that the CCN Affiliated Health Plan is governed by the provisions of the Employee Retirement Income Security Act.

4.   Termination

4.1   Effect of Termination. For the purposes of Case Management, on the date of termination, CCN Services will be discontinued as of that date unless Payor and CCN agree, in writing, to other arrangements.

5.   Administrative

5.1   CCN Not a Healthcare Provider. The parties acknowledge that CCN is not a healthcare provider and that all members of the CCN Network are independent contractors and are not employees of CCN or its affiliates. Neither party shall attempt, directly or indirectly, to control, direct or interfere with the practice of medicine by any member of the CCN Network.

5.2   Compensation for CCN Services. Payor shall pay CCN the fees set forth in this Addendum for all CCN Services rendered pursuant to this Addendum.